713 A.2d 1135

DELAWARE COUNTY, Pennsylvania; the Delaware County Council; Ward T. Williams, Paul G. Mattus, Thomas H. Killion, Wallace H. Nunn, and John J. McFadden, in their Capacity as Members of the Delaware County Council; the Delaware County Board of Prison Inspectors; and Charles Sexton, William Kelly, Elizabeth Signor, Ward Williams, and John McKenna, in their Capacity as Members of the Delaware County Board of Prison Inspectors and Wackenhut Corrections Corporation

v.

DELAWARE COUNTY PRISON EMPLOYEES INDEPENDENT UNION, Robert Pizzi, President, Delaware County Prison Employees Independent Union, in His Official Capacity and as a Taxpayer; and Michael Pelleritti, Secretary, Delaware County Prison Employees Independent Union, in His Official Capacity and as a Taxpayer.

Appeal of DELAWARE COUNTY, Pennsylvania, Delaware County Council, Ward T. Williams, Paul G. Mattus, Thomas H. Killion, Wallace H. Nunn, John J. McFadden, Delaware County Board of Prison Inspectors, Charles Sexton, Jr., William Kelly, Elizabeth Signor and John McKenna.

DELAWARE COUNTY, Pennsylvania; the Delaware County Council; Ward T. Williams, Paul G. Mattus, Thomas H. Killion, Wallace H. Nunn, and John J. McFadden, in their Capacity as Members of the Delaware County Council; the Delaware County Board of Prison Inspectors; and Charles Sexton, William Kelly, Elizabeth Signor, Ward Williams, and John McKenna, in their Capacity as Members of the Delaware County Board of Prison Inspectors and Wackenhut Corrections Corporation

v.

DELAWARE COUNTY PRISON EMPLOYEES INDEPENDENT UNION, Robert Pizzi, President, Delaware County Prison Employees Independent Union, in His Official Capacity and as a Taxpayer; and Michael Pelleritti, Secretary, Delaware County Prison Employees Independent Union, in His Official Capacity and as a Taxpayer.

**Appeal of WACKENHUT CORRECTIONS CORPORATION.**

Supreme Court of Pennsylvania.

Argued April 30, 1997.

Decided July 2, 1998.

Robert M. DiOrio, Media, Robert F. Stewart, Jr., Philadelphia, for Del. Co. Bd. of Prison Insp., et al.

Richard P. McElroy, Bruce W. Kauffman, Michael J. Hanlon, Philadelphia, for Delaware County, Penn.

Ralph J. Teti, Wayne Wynn, Philadelphia, for Delaware County Prison, et al.

Richard H. Glanton, Christopher Walters, Sean M. Halpin, Philadelphia, for Wakenhut Corrections Corp.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION ANNOUNCING JUDGMENT OF THE COURT*

FLAHERTY, Chief Justice.

This is an appeal by allowance from an order of the Commonwealth Court which reversed an order of the Court of Common Pleas of Delaware County and reinstated an arbitrator's award prohibiting Delaware County from "privatizing," i.e., fully subcontracting, the operation of a prison facility. The factual background of the case is as follows.

In July of 1995, the Delaware County Prison Employees Independent Union was notified by Delaware County Council that, effective September 30, 1995, all of the correctional officers employed at the county's prison would be laid off. The layoff was due to the fact that the county had entered a contract with Wackenhut Corrections Corporation to have Wackenhut's employees serve as corrections officers.

In an effort to avert the planned layoff, the union filed a grievance under the existing labor contract and filed charges

of unfair labor practices against the county. The union also sought a preliminary injunction.

The court of common pleas denied injunctive relief. On September 29, 1995, the commonwealth court granted an injunction pending appeal. Subsequently, it reversed the lower court's denial of a preliminary injunction and remanded for further proceedings. On March 19, 1996, the court of common pleas granted a preliminary injunction with a proviso that the injunction would expire on March 31, 1996, the date when the collective bargaining agreement was to lapse. On March 28, 1996, arbitration proceedings under the collective bargaining agreement culminated in a decision by an arbitrator that the county's prison privatization efforts violated the bargaining agreement. Nevertheless, on April 1, 1996, Wackenhut assumed control over operation and management of the prison and laid off all of the correctional officers. Wackenhut then rehired nearly all of the officers to serve as its own employees and to perform the same work at the prison.[1]

On April 15, 1996, the court of common pleas denied additional requests by the union for injunctive relief and granted the county's petition to vacate the arbitrator's award. An appeal was taken to the commonwealth court, whereupon the decision below was reversed, the arbitrator's award was reinstated, and the county was directed to cease and desist from privatizing the prison operation. We reverse on the ground that the arbitrator's decision was erroneous.

The standards governing review of an arbitrator's award are well established. As we stated in *Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association*, 520 Pa. 197, 199–200, 553 A.2d 913, 914–15 (1989) (citations omitted),

> It is well settled that, in reviewing an arbitrator's interpretation of a collective bargaining agreement, broad deference is to be accorded the arbitrator's decision. . . .

---

1. More than 150 of the 170 union corrections officers became Wackenhut employees. Wackenhut was willing to employ nearly all of the remaining officers. However, various union members declined to accept employment. Only two union applicants were rejected by Wackenhut.

The so-called "essence of the collective bargaining agreement" test has been frequently enunciated by this Court as the standard governing judicial deference to arbitrators' decisions. It requires that an arbitrator's interpretation be upheld if it can, in *any rational way,* be derived from the language and context of the agreement. When an issue, properly defined, is within the terms of a collective bargaining agreement and the arbitrator's decision can in a rational way be derived from the terms of the agreement, one can say that the decision draws its "essence" from the agreement, and reversal is not warranted even if a court believes that the decision, though rational, is incorrect.

Accord. *Midland Borough School District v. Midland Education Association, PSEA,* 532 Pa. 530, 535–36, 616 A.2d 633, 635–36 (1992) (arbitrator's interpretation of a collective bargaining agreement is valid under the "essence" test if it can in any rational way be derived from the agreement).

 We perceive no rational manner in which an arbitrator, upon consideration of the provisions of the present agreement, could have determined that privatizing operations at the county prison by subcontracting operation of the facility to Wackenhut was violative of the agreement. The decision prohibiting Wackenhut from being retained to operate the prison simply does not derive its "essence" from the agreement.

Article 2, Section 1 of the agreement is entitled "Inherent Management Rights." In pertinent part, it provides:

The Employer [Delaware County] reserves the right to manage and operate its establishment in such manner as it sees fit, including but not limited to:

(a) Right to hire, transfer, promote, demote, lay off, discipline or discharge employees to the extent not modified by this Agreement;

. . . .

(c) To subcontract work and services and delete and discontinue departments and personnel within County Government;

In the most plain and unambiguous terms, this provision invests the county with authority to manage and operate the prison "as it sees fit," to "lay off" or "discharge" employees, to "subcontract work," and to "discontinue departments and personnel." Such powers are precisely those which the county exercised by hiring Wackenhut to operate the prison. There is no language in any other portion of the agreement that contradicts the powers conferred by this section. Further, Article 28, Section 1 of the agreement sets forth an integration clause which provides that "[t]he parties mutually agree that the terms and conditions expressly set forth in this Agreement represent the full and complete understanding, Agreement and commitment between the parties thereto." Thus, Article 2, Section 1 constitutes the entire agreement of the parties as to the subject matter under dispute.

■ The intent of the parties to a written contract is deemed to be embodied in the writing itself, and when the words are clear and unambiguous the intent is to be gleaned exclusively from the express language of the agreement. *Stewart v. McChesney,* 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982). Indeed, "the focus of interpretation is upon the terms of the agreement as *manifestly expressed,* rather than as, perhaps, silently intended." *Id.*

The arbitrator in the present case concluded that the union would not have intended to confer such broad powers upon the county as those that were ostensibly expressed in the agreement. He determined, therefore, that the county's right to subcontract was limited in scope, to wit, that it did not permit such extensive subcontracting as would amount to privatization of the entire prison operation. He viewed the unfettered power to subcontract as being highly unfavorable to the interests of union employees and concluded that if the parties had really intended that such extensive subcontracting could occur then there should have been language in the agreement specifying that a complete privatization was permitted. Absent such language, the power to subcontract was deemed to have been intended as limited in scope.

Under *Steuart v. McChesney*, however, the inquiry must focus on what the agreement manifestly expressed, not what the parties may have silently intended. It is not proper, under the guise of construction, to alter the terms to which the parties, whether in wisdom or folly, expressly agreed. *Id.* at 51, 444 A.2d at 662. Here, the agreement expressly provided the county with power to subcontract work and lay off employees. No limits on that power were set forth in the agreement. The arbitrator was obliged to apply the agreement as written, without imposing additional terms that modify and limit what the parties expressed.

In addition, the arbitrator's authority to resolve grievances in this case was expressly limited by the agreement itself. Article 9, Section 6 of the agreement states that "[i]n rendering a decision, the arbitrator shall be confined to the meaning and interpretation of the particular provision of this Agreement which gave rise to the grievance." Further, Article 9, Section 7 states that "[t]he arbitrator shall not have the authority to change, amend, modify, supplement or otherwise alter this Agreement in any respect whatsoever...." In short, the arbitrator was required to adhere to the express terms of the agreement and was not empowered to diverge therefrom in resolving a grievance.

The arbitrator's decision in this case was a plain departure from the terms of the agreement. It cannot, therefore, be sustained.[2] The commonwealth court's decision to the contrary must be reversed.

Order reversed.[3]

2. In view of our disposition of this issue, we need not extensively address the county's argument that the arbitrator erred in extending the prohibition on privatization beyond the expiration date of the collective bargaining agreement. See *Midland Borough School District*, 532 Pa. at 537–40, 616 A.2d at 636–38 (limits on an arbitrator's power to award a remedy that extends beyond the expiration of the bargaining agreement). A fortiori, where the arbitrator's decision was erroneous, any extension of the period of its effectiveness was likewise erroneous.

3. The parties' applications for leave to file post-submission communications pursuant to Pa.R.A.P. 2501(a) are denied on the basis that the

CAPPY, J., files a concurring opinion in which NEWMAN, J., joins.

NIGRO, J., concurs in the result.

CAPPY, Justice, concurring.

While I concur in the result reached by the majority, I am compelled to write separately to emphasize my disagreement with the rationale utilized in reaching that result.

In summary, the majority, by substituting its own interpretation of the collective bargaining agreement for that of the arbitrator, has ignored the jurisprudence of this court by departing from our established and extremely limited standard of review, i.e. the "essence" test. Simply stated, the majority's conclusion that the arbitrator's award cannot in "any rational way" be derived from the collective bargaining agreement is belied by the language of the parties' agreement as well as the parties' history of negotiations. Unfortunately, through this decision, this court is now in the business of interpreting the minutiae of collective bargaining agreements. This message will spawn needless litigation as employers and unions alike, when dissatisfied with an arbitrator's award, will now be encouraged to petition to vacate the award in hopes that a court will reverse the arbitrator's determination. Perhaps most importantly, by rejecting the arbitrator's interpretation of the agreement and equating privatization with subcontracting, the majority's ruling will alter existing labor agreements to now permit privatization where it was never agreed to, or intended, by the parties.

The standard of review by which this court is bound in reviewing a labor arbitrator's award under the Pennsylvania Employe Relations Act is most circumscribed. The now familiar and oft cited "essence" test mandates that an arbitrator's award will not be overturned if it draws its essence from the collective bargaining agreement. *Community College of Beaver County v. Community College of Beaver County Society of*

proffered submissions contain no information relevant to the issues in this case.

*the Faculty,* 473 Pa. 576, 590–91, 375 A.2d 1267, 1274 (1977). More precisely, so long as an arbitrator's interpretation "can in *any rational way* be derived from the [collective bargaining] agreement" it must be affirmed. *Id.* 473 Pa. at 593–94, 375 A.2d at 1275 (citation omitted)(emphasis supplied). The extreme deference to be given to arbitration awards cannot be emphasized enough.

The sharp limitation on the judiciary's role in reviewing an arbitration award is eminently appropriate because "[t]he parties to [a] collective bargaining agreement ha[ve] bargained for the arbitrator's construction, not the court's; thus, a court has no business intruding into the domain of the arbitrator because its interpretation of the agreement differs from his." *Scranton Federation of Teachers v. Scranton School District,* 498 Pa. 58, 65, 444 A.2d 1144, 1147 (1982). More specifically, and especially applicable to this matter, the " 'arbitrator in analyzing (a) dispute may have failed to properly perceive the question presented or erroneously resolved it, (but that) does not provide justification for judicial interference. [The court's] inquiry ends once it is determined that the issue properly defined is within the terms of the agreement.' So be it!" *Leechburg Area School District v. Dale,* 492 Pa. 515, 522, 424 A.2d 1309, 1313 (1981)(Flaherty, J. concurring).[1]

So be it indeed. In this case, the majority cites the essence test but fails to adhere to its mandate, and improperly in-

---

1. This hands-off approach to arbitration awards by the judiciary has its genesis in, and is consistent with, federal decisional law as first stated by the United States Supreme Court in the famed "Steelworker's Trilogy." *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); and *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

As stated by the Court:

The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

*United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424, 1427 (1960).

trudes into the arbitrator's domain. Specifically, the majority believes that the terms of Article 2, Section 1 of the agreement, the "Inherent Management Rights" clause, are clear and unambiguous, and, therefore, contends that the intent of the parties is to be determined solely from the express language of the agreement, citing the general contract interpretation case of *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982).[2] The majority then imposes its interpretation of these "plain" terms upon the parties and finds, contrary to the arbitrator, that privatization is permitted under the agreement. Thus, the majority concludes that the arbitrator's award cannot in "any rational way" be derived from the collective bargaining agreement.

The majority's conclusion that the relevant terms are clear and unambiguous is belied by other reasonable interpretations of the same language. More importantly, the narrow approach taken by the majority in determining the parties' intent, and thus, in determining the validity of the arbitrator's award, is contrary to this court's prior labor arbitration case law.

As a general proposition, a contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. 8 P.L.E. *Contracts* § 146. Here, the relevant terms contained in Article 2,

---

**2.** While the majority cites the legal proposition that when the words are clear and unambiguous, the intent of the parties is to be determined by the express language of the agreement, it has failed to consider equally applicable tenets of contract interpretation. The majority ignores the fundamental legal axioms that in interpreting a contract, all the provisions thereof should be harmonized, if possible, and interpreted together to give them effect, and that an interpretation will not be given to one part of a contract which will annul another part. 8 P.L.E. *Contracts* §§ 158, 159. The majority submits that there are no other provisions of the agreement which contradict the power to privatize. On the contrary, the parties have agreed to a "Recognition" clause found at Article 1 which recognizes the union as the employees bargaining representative and a "Duration" clause found at Article 29 of the agreement which mandated that the agreement remain in full force and effect until March 31, 1996. If subcontracting included privatization with a private contractor during the life of the agreement, it would end the agreement with the Union prematurely, and, thus, be violative of both the recognition and duration clauses.

Section 1(c) of the agreement[3] are not so clear as to be susceptible of only one meaning and are certainly capable of being understood in more than one sense.

First, the tenor of Article 2, Section 1(c), read as a whole, contemplates distinct portions of the work being subcontracted or discontinued.[4] Moreover, the individual terms relied upon by the majority do not necessarily suggest wholesale privatization and the elimination of the entire bargaining unit. A prime example is the term "*sub* contracting" which plainly recognizes the continued existence of a contract from which some, but not all, work may be removed. Thus, the parties "subcontracting" clause does not recognize or allow the termination of the entire contract and elimination of the whole bargaining unit through privatization. Indeed, the majority's reference to "fully subcontracting" is internally contradictory and highlights the fragility of its interpretation of that term. Likewise, a reasonable interpretation of the County's right to discontinue "departments and personnel" is the right to eliminate discrete subdivisions of the prison operation, but not the entire bargaining unit. These interpretations which differ from those of the majority clearly establish that the terms of Article 2, Section 1(c) are ambiguous, and, therefore, that the arbitrator's award is ". . . in any rational way . . . derived from the [collective bargaining] agreement." *Community College of Beaver County.* Simply put, the arbitrator's award is rational.

3. The arbitrator determined that the issue before him primarily turned on Article 2, Section 1(c) of the agreement. More importantly, the County, before the arbitrator and in its brief before this court, has relied solely upon Section 1(c) as the dispositive provision of the agreement. Therefore, the majority's reliance upon the terms of Section 1(a) is seemingly inappropriate, as under the essence test, the court should look to the terms relied upon by the arbitrator, or at least the terms offered by the parties, to determine whether the arbitrator's award derives its essence from the collective bargaining agreement.

4. Article 2, Section 1(c) states:
 The Employer reserves the right to manage and operate its establishment in such a manner as it sees fit, including but not limited to:
 (c) To subcontract work and services and delete and discontinue departments and personnel within County Government;

Moreover, while the majority espouses an approach to contract interpretation which looks at the terms of the collective bargaining agreement in a vacuum, without regard to any other indicia of the parties' intent, at least in the unique context of labor relations arbitration, this court has espoused a significantly different approach. In *Community College of Beaver County*, 473 Pa. at 593–94, 375 A.2d at 1275, the seminal case regarding review of an arbitrator's award, this court made clear that in viewing the arbitrator's determination of the parties' intent, the arbitrator's award is to be respected if "the interpretation can in any rational way be derived from the agreement, *viewed in light of its language, its context, and any other indicia of the parties' intention.*" (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969)).

In *Fletcher*, the learned Judge Ruggero J. Aldisert spoke to the process of determining whether contract language was clear and unambiguous.

> Nor do we agree that the District Court was correct in isolating one phrase of the eligibility clause to reach its conclusion that the contract language was clear and unambiguous. In ascertaining whether language is clear and unambiguous the court must look to more than one detached section of the contract; it must consider (1) the surrounding circumstances, prior negotiations, all relevant incidents bearing on the intent of the parties; (2) who prepared the instrument; (3) the relative bargaining position of the parties; (4) the doctrine of practical construction; and (5) the main purpose of the contract. Williston, Interpretation and Construction of Contracts, Ch. 22, § 600A.
> 405 F.2d at 1130 fn. 31.[5]

---

**5.** In further support of a broad approach to ascertaining the intent of the parties, it should be noted that the United States Supreme Court has determined that in addition to general contract construction, a collective bargaining agreement must be viewed in the context of the "industrial common law." Specifically, in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409, 1417 (1960), the Court noted that "[t]he labor arbitrator's source of law is not confined to the express provisions of

Thus, the arbitrator in the case *sub judice,* did exactly what this court has suggested, and what the majority has failed to do; he determined the intent of the parties by viewing the language contained in the agreement along with other indica of the parties' intention. To support his conclusion that replacing the entire bargaining unit with a private contractor violated the parties' collective bargaining agreement, the arbitrator first found that the subcontracting clause was unclear and ambiguous based upon differing constructions by the parties, the impact on other provisions of the agreement, including, the recognition clause and the duration clause, and the County's heavy reliance upon parol evidence. The arbitrator viewed the differing interpretations of the subcontracting clause and reviewed the extensive bargaining history which illuminated that language. The arbitrator found that the competing testimony regarding the bargaining history of the clause demonstrated that there was no meeting of the minds regarding whether the provision permitted the County to substitute a private contractor for the entire bargaining unit, and noted that the parties had used the term "privatization" in negotiations in 1984–85, but that this language did not find its way into the final collective bargaining agreement. Finally, the arbitrator buttressed his findings by extending comity to the Commonwealth Court's decision in *DCPEIU v. Delaware County,* 671 A.2d 1202, 1205–06 (Pa.Cmwlth.1996), which found that, pursuant to the duration clause, the agreement between the parties was terminable in its entirety no sooner that March 31, 1996, the expiration date of the collective bargaining agreement.

Based upon the above, there can be no question that the arbitrator's award was rationally derived from the agreement, and, thus, should be upheld. While the majority, unable to countenance the award, is attempting to correct what it sees as an erroneous interpretation of the agreement, the essence test does not allow such corrections and the ramifications of

the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."

failing to follow the essence test will extend far into the future. Now, an employer or an employee representative who did not prevail at arbitration will be encouraged to file a petition to vacate the arbitration award in the hopes that it can somehow skillfully argue its case again, and perhaps win in court what it failed to achieve in arbitration. Thus, we will lose the primary reasons for having an alternative dispute resolution procedure such as labor arbitration: speed, cost effectiveness, finality, and industrial peace.

Unfortunately, this decision will affect parties far beyond this case. By determining that privatization is subsumed in subcontracting, the majority impacts existing collective bargaining agreements which are silent as to privatization but which contain a subcontracting clause. Now, in situations where the parties did not intend, agree to, or even contemplate privatization, privatization will seemingly be permitted. This is true even where, like here, the parties discussed and negotiated the concept of privatization, yet that concept was never expressly or implicitly incorporated into the parties' collective bargaining agreement. It is unfortunate that instead of deferring to the traditional give and take of the collective bargaining process, the majority has made a statewide pronouncement as to what constitutes subcontracting, no matter what the intention or bargaining history of the parties.

While I strongly disagree with the majority's approach to this matter, I nevertheless concur in the result reached by the majority.

In *Midland Borough School District v. Midland Education Association, PSEA*, 532 Pa. 530, 616 A.2d 633 (1992) this court held that an arbitrator's remedy did not continue in effect beyond the life of the parties' collective bargaining agreement. Briefly stated, in *Midland Borough* a school district subcontracted educational services for certain students by transferring the students to another school district on a tuition basis. As a result, all teaching positions in grades seven through twelve were eliminated. The union filed a grievance challenging the decision to "tuition out" the students and alleging a violation of the collective bargaining agreement. While the

grievance was pending, the school district implemented its program. Thereafter, an arbitrator, five days before the expiration of the agreement, sustained the grievance and ordered the school district to re-open the already closed facility and re-employ teachers to provide instructional services for the affected students.

On appeal, this court noted that whether an arbitrator has the power to implement an award beyond the expiration of the collective bargaining agreement is fundamentally a question of jurisdiction, and, therefore, the arbitrator's decision is not entitled to the same deference traditionally extended to his interpretation of a contract. This court reasoned that "[c]ompliance with the arbitrator's decision would result in a remedy being fashioned well beyond the temporal parameters by which the parties ... agreed to be bound." *Id.*, 532 Pa. at 540, 616 A.2d at 638. After considering the burdensome nature of the remedy and the potential impact of the remedy upon the parties' bargaining process, this court concluded that the arbitrator improperly awarded a remedy which extended beyond the expiration date of the collective bargaining agreement. *Id.*, 532 Pa. at 538, 616 A.2d at 637–39.

In accordance with the above-stated reasoning of *Midland Borough,* when the collective bargaining agreement between the County and the Union expired, so did mandatory compliance with the arbitrator's remedy. That being the case, upon expiration of the agreement, the County was free to contract with Wackenhut Corrections Corporation to operate the prison.

For the above stated reasons, I concur in the result reached by the majority.

NEWMAN, J., joins this concurring opinion.