**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1495
_____

PHILIP T. SIEGEL, DDS,
Appellant

v.

MARK GOLDSTEIN, DDS; BRIAN SMITH, DMD;
JOSEPH P. MULLIGAN, DMD; SAMER ABDELSAMIE, DMD;
DELAWARE VALLEY MAXILLOFACIAL AND ORAL SURGERY, P.C.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:19-cv-02890)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on February 1, 2024

Before: CHAGARES, *Chief Judge*, RESTREPO and FREEMAN, *Circuit Judges*

(Opinion filed:  April 12, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Philip Siegel, a retired dentist, was a shareholder in his former dental practice. When the other shareholders discovered a breach of the practice's operating agreement, they canceled Siegel's shares as void but permitted him to keep the distributions he had already received under the agreement. Siegel sued the other shareholders and the practice, and the District Court granted summary judgment for Defendants. We will affirm.

## I

Siegel co-founded Delaware Valley Maxillofacial and Oral Surgery (DVMOS) as an LLC in 2003. Although he was licensed to practice dentistry, he never treated DVMOS's patients; instead, he performed business and teaching functions for the practice. In 2014, he retired to Florida and placed his dental license in inactive status. Although he did not actively conceal the status of his license, he did not tell the other members of the LLC that his license was inactive. He continued to collect distributions pursuant to the LLC's operating agreement.

In 2016, William Burns—DVMOS's accountant and Siegel's personal accountant—recommended that the LLC convert to a professional corporation (PC) for tax advantages. Burns and DVMOS's attorney, Stuart Lundy, told the members that the conversion would not affect the members' rights to their share of the distributions. Lundy then prepared documents for the conversion, including a Shareholders' Agreement (SA).

2

The SA's "Qualified Shareholders" provision states that "no [s]hares shall be issued by the Corporation . . . except . . . to a person licensed to render the Services in the State." App. 71. It also states that "[a]ny attempted issuance . . . in violation of this provision shall be void and ineffective." *Id.*

The SA's arbitration provision states that "expedited arbitration shall be the exclusive remedy to resolve any dispute or alleged breach relating to this agreement, whether statutory or sounding in contract or in tort, excepting (i) the enforcement of the restrictive covenants, (ii) other *actions in equity*, and (iii) actions with an amount in dispute of less than $12,000.00." App. 81 (emphasis added).

Siegel reviewed the SA with his attorney, but neither his attorney nor Lundy inquired about the status of Siegel's license. He and three other shareholders signed the SA on April 1, 2016, and the PC was formed. On that date, Siegel's shares were worth $502,000. From the PC's formation date through May 2019, Siegel collected $825,830 in distributions.

In early 2019, the other shareholders learned that Siegel's license was inactive and had been since 2014. DVMOS tried to negotiate a buyout of Siegel's shares, but the parties could not reach an agreement. DVMOS then notified Siegel that his shares had been cancelled as void.

On July 2, 2019, Siegel sued DVMOS and its shareholders. The District Court granted Defendants' motion to compel arbitration. The arbitrator then concluded that Siegel was not a Qualified Shareholder under the SA, so the shares issued to him at the time of conversion were void. The arbitrator therefore concluded that Defendants were

3

entitled to cancel Siegel's shares—but "not without proper compensation." App. 140. The arbitrator also determined that the distributions Siegel received while his license was inactive compensated him for the cancellation of his shares.

After the arbitration, Siegel returned to the District Court and amended his complaint, seeking only equitable relief. The District Court confirmed the arbitration award and granted Defendants' motion to dismiss the complaint. It concluded that the claims sounded in law (rather than equity) and thus were barred by the SA's arbitration provision.

On appeal, this Court affirmed the order confirming the arbitration award but vacated the order granting the motion to dismiss. *Siegel v. Goldstein*, No. 20-3547, 2022 WL 2234952 (3d Cir. June 22, 2022) (*Siegel I*). We held that the arbitration provision permitted some of Siegel's claims to proceed in court, *id*. at *4–*5, so we remanded for further proceedings. We left open whether Siegel's surviving claims were precluded under the doctrine of collateral estoppel. *Id*. at *4 n.2.

On remand, the parties cross-moved for summary judgment. The District Court granted Defendants' motion and denied Siegel's. Siegel timely appealed.

II

The District Court had jurisdiction over Siegel's equitable claims under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review of a district court's order granting summary judgment, *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 144 (3d Cir. 2023), and its application of collateral estoppel, *In re Bestwall LLC*, 47 F.4th 233, 242 (3d Cir. 2022). "Summary

4

judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Huber*, 84 F.4th at 144 (quoting Fed. R. Civ. P. 56(a)).

III

Siegel appeals the grant of summary judgment for Defendants on his equitable breach of contract, breach of fiduciary duty, minority shareholder oppression, and declaratory judgment claims. We address each in turn.

*A. Equitable Breach of Contract*

We agree with the District Court that collateral estoppel precludes Siegel's equitable breach of contract claim. Collateral estoppel precludes relitigation of certain issues that have been determined by a "court[] of competent jurisdiction." *Adelphia Gateway, LLC v. Pa. Env't Hearing Bd.*, 62 F.4th 819, 826 (3d Cir. 2023). "Under Pennsylvania law, arbitration proceedings and their findings are considered final judgments for the purposes of collateral estoppel." *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999).

To invoke the doctrine of collateral estoppel, a party must establish four factors, including that "an issue decided in a prior action is identical to the one presented in a later action." *Adelphia Gateway*, 62 F.4th at 826 (quoting *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998)).[1] The party must also show that the issue was "necessary to the

---

[1] The remaining three factors are:

> (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action,

5

original judgment." *Id*. at 827 (quoting *Hebden v. Workmen's Comp. Appeal Bd.*, 632 A.2d 1302, 1304 (Pa. 1993)).

Here, breach was a necessary factor in the legal breach of contract claim before the arbitrator, and Siegel presented the identical factor to the District Court in his equitable claim. *Doe v. Univ. of Scis.*, 961 F.3d 203, 211 (3d Cir. 2020) ("Under Pennsylvania law, three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages." (cleaned up)); *Siegel I*, 2022 WL 2234952, at *4 (observing that the remedy sought is the only difference between equitable and legal breach of contract claims under Pennsylvania law).

The arbitrator concluded that Defendants "were legally entitled to cancel the shares" because they were "void by the terms of the SA." App. 140. She then concluded that the distributions Siegel received while his shares were void properly compensated him according to "the formula in both the [original agreement] and the SA." App. 141. In making these conclusions, she made a final, necessary determination that Defendants did not breach the SA when they cancelled Siegel's shares after compensating him. That determination precludes Siegel's equitable claim for breach of contract.

---

or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Adelphia Gateway*, 62 F.4th at 826 (quoting *Rue*, 713 A.2d at 84).

Siegel asserts that an equitable exception from collateral estoppel is warranted. The Restatement (Second) of Judgments states that collateral estoppel does not preclude relitigation of an issue if "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them." Restatement (Second) of Judgments § 28(3) (1982).[2] But Siegel makes no compelling argument that the arbitration procedures lacked quality or extensiveness. We also are unpersuaded that the arbitrator's ability to adjudicate only claims at law renders collateral estoppel inequitable.

*B. Breach of Fiduciary Duty & Minority Shareholder Oppression*[3]

Siegel's minority shareholder oppression claim fails because he could not have reasonably expected to retain his shares after the conversion. A party establishes a claim for minority shareholder oppression by showing that majority shareholders engaged in "conduct that substantially defeat[ed] the reasonable expectations held by minority shareholders in committing their capital to the particular enterprise." *Ford v. Ford*, 878 A.2d 894, 900 (Pa. Super. Ct. 2005) (cleaned up); *see also id.* at 905 ("Freezing out the minority in order to benefit the majority is a breach of fiduciary duty."). A minority shareholder's expectations must be "reasonable under the circumstances" when

---

[2] Pennsylvania has not expressly adopted Section 28 but cites it favorably. *See Rue*, 713 A.2d at 86. Here, we assume (without deciding) that the Pennsylvania Supreme Court would adopt this exception,

[3] As the District Court noted, Siegel's fiduciary duty claim rests only on his theory of minority shareholder oppression. App. 16. Therefore, we address these claims together.

"objectively viewed." *In re Kemp & Beatley, Inc.*, 473 N.E.2d 1173, 1179 (N.Y. 1984).[4]

Majority shareholders engage in oppressive conduct when they "use their power . . . to exclude minority shareholders from their proper share of benefits accruing from the enterprise." *Ford*, 878 A.2d at 905 (quoting *Kessler v. Broder*, 851 A.2d 944, 948 (Pa. Super. Ct. 2004)).

No reasonable jury could conclude that Siegel reasonably expected to be able to retain his shares after the conversion.[5] A contract is intended to reflect "[t]he intent of the parties." *Delaware County v. Delaware Cnty. Prison Emps. Indep. Union*, 713 A.2d 1135, 1137 (Pa. 1998). When a contract's "words are clear and unambiguous the intent is to be gleaned exclusively from the express language of the agreement," *id.*, not from "what the parties may have silently intended," *id.* at 1138; *cf. Consol. Rail Corp. v. ACE Prop. & Cas. Ins. Co.*, 182 A.3d 1011, 1026 (Pa. Super. Ct. 2018) ("[A]n insured may not complain that its reasonable expectations were frustrated by policy limitations which are clear and unambiguous." (cleaned up)).

The plain text of the SA sets out the parties' intent regarding prospective shareholders with inactive licenses. In short, such persons cannot be Qualified

---

[4] Pennsylvania has adopted New York's definition of oppressive action, which sets forth the reasonable expectation requirement. *Gee v. Blue Stone Heights Hunting Club, Inc.*, 604 A.2d 1141, 1145 (Pa. Commw. Ct. 1992).

[5] The arbitrator found that none of the persons involved in the conversion from an LLC to a PC (that is, Siegel, his attorney, Burns, Lundy, the LLC's members, or DVMOS's shareholders) expected that the conversion would prevent Siegel from owning shares in DVMOS. App. 136-37, 140. She did not address whether their subjective expectations were reasonable, and her factual finding has no preclusive effect on the objective reasonableness question.

8

Shareholders. App. 71. Therefore, a reasonable prospective shareholder in Siegel's position would have expected that the conversion would void his existing shares due to his inactive license.

Siegel argues that he reasonably relied on the representation from Lundy (DVMOS's attorney) that "nothing was going to change" as a result of the conversion.[6] App. 140. But the arbitrator found that Siegel alone knew that his license was inactive. In these circumstances, it was unreasonable for Siegel to rely on Lundy's statement over the plain contractual language.

### C. Equitable Estoppel & Declaratory Judgment

Siegel's equitable estoppel claim is foreclosed by his unreasonable reliance on Lundy's statement. Equitable estoppel "recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity." *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983). Justified reliance is one of "two essential elements of equitable estoppel." *Id.* A party is not justified in relying on a representation if it would be unreasonable for him to do so. *See Jacob v. Shultz-Jacob*, 923 A.2d 473, 480 (Pa. Super. Ct. 2007) (defining the doctrine of equitable estoppel to require the deprivation "of a reasonable expectation").

---

[6] Defendants argue that Lundy's statements are parol evidence that we may not consider. We assume without deciding that we may consider those statements, as we would affirm the District Court's order with or without them.

9

Siegel unreasonably relied on Lundy's statement, so there is no basis for a declaratory judgment that equitable estoppel bars Defendants from asserting that they had contractual grounds to cancel Siegel's shares.

*     *     *

For the foregoing reasons, we will affirm.

10