**GREATER NANTICOKE AREA SCHOOL DISTRICT,**
**Appellant,**

**v.**

**GREATER NANTICOKE AREA EDUCATION ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued May 16, 2000.
Decided Oct. 19, 2000.

Ellis H. Katz, New Britain, for appellant.

Charles L. Herring, Ambler, for appellee.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, JIULIANTE, Senior Judge.

LEADBETTER, Judge.

The Greater Nanticoke Area School District appeals from the order of the Court of Common Pleas of Luzerne County, which denied its petition to vacate the arbitration award adjudging the school district in violation of the "no furlough" provision of the collective bargaining agreement (CBA) for demoting ten teachers to part-time positions. The school district contends that the award does not draw its essence from the CBA because the arbitrator improperly relied upon parol evidence to interpret the parties' intent regarding the meaning of the word "furlough." For the reasons which follow, we affirm.

In July of 1997, the school district demoted ten teachers from full-time to part-time status. Shortly thereafter, the Greater Nanticoke Area Education Association filed a grievance contending that the demotion violated the "no furlough" clause of the CBA. The 1991–1996 CBA, as modified and extended until August 31, 1998, provided in relevant part as follows, "It is agreed between the parties that in recognition of the salary modifications, the Greater Nanticoke Area School District shall not involuntarily furlough any current bargaining unit member during the term of the modified agreement." The school district maintained that this prohibition against involuntary furlough had no bearing on reductions in status from full to part-time. In opposition, the Association contended that the term "furlough" encompassed any action adversely affecting employment status, including the demotion to part-time. Pursuant to the CBA, the matter was submitted for binding arbitration in accordance with Section 903 of the Public Employee Relations Act (Act 195).[1] Following a hearing, the arbitrator found the term "furlough" to be ambiguous in the context of the CBA. Based on testimony about the negotiations underlying the furlough prohibition,[2] he determined that the parties intended that the prohibition applied to the demotions at issue here. Consequently, the arbitrator sustained the grievance. The court of common pleas denied the school district's petition to va-

---

1. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.903, states in relevant part, "Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory."

2. The parties do not dispute the history of events leading to the adoption of the "no furlough" provision as a modification of the 1991 – 1996 CBA. In 1993, the district suspended three teachers and demoted one to half-time. While the teachers' grievances were pending, the district sought to reinstate one of the suspended and one of the demoted teachers with full job security for three years in exchange for their withdrawal of all claims. The Association, as the bargaining representative, did not agree because the rehired teachers would have more job security than more senior teachers. On behalf of both the individuals to be rehired and the other members of the bargaining unit, the Association negotiated a modification to the 1991—1996 CBA extending its effective date, delaying scheduled salary increases and, in exchange therefore, prohibiting involuntary furlough. The arbitrator found that during the negotiations the school district expressly assured representatives of the Association that the prohibition against furlough was meant to prohibit any adverse change in work status, as had been promised to the two reinstated teachers. The arbitrator credited testimony by an Association Vice–President that the school district gave explicit assurances during negotiations that "furlough" included demotions.

cate the award. The school district filed the present appeal.

The proper scope of judicial review of a grievance arbitration award has been the subject of several recent opinions of our Supreme Court. In *State System of Higher Education (Cheyney University) v. State College University Professional Association*, 560 Pa. 135, 743 A.2d 405 (1999), the court noted that the essence test has long been established as the appropriate standard of review of an Act 195 arbitrator's interpretation of a CBA. However, based as it is upon concepts as slippery as "rationally derived" and "logically flowing from," the essence test standard has been susceptible to interpretational drift. As a conceptual anchor, the court reviewed the analytical principles underlying the decision in *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), wherein Pennsylvania adopted the essence test announced by the United States Supreme Court in *United Steelworkers v. Enterprise Wheel & Car Corp.:*

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.
>
> . . . .
>
> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business

overruling him because their interpretation of the contract is different from his. 363 U.S. 593, 597–99, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The court in *Beaver County* further equated the essence test with the statutory standard of review articulated in the Arbitration Act of 1927,[3] which it recognized as applicable to arbitration pursuant to collective bargaining agreements under Act 195. 473 Pa. at 585, 375 A.2d at 1271. While the Arbitration Act of 1927 was repealed three years after the decision in *Beaver County*, its provisions were largely reenacted by the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7362. In particular, the standard of review now appears at 42 Pa.C.S. § 7302(d)(2), as follows:

> Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

As the court in *Beaver County* noted, this standard of review establishes between the reviewing court and the arbitrator's award the same relationship as traditionally exists between a reviewing court and a jury's verdict and dictates a level of scrutiny not very different from the essence test. *Beaver County*, 473 Pa. at 589, 375 A.2d at 1273. *See also Upper St. Clair Sch. Dist. v. Upper St. Clair Educ. Support Personnel Assoc.*, 168 Pa.Cmwlth. 1, 649 A.2d 470, 471 (1994).

Based upon the teachings of *Beaver County*, the court in *Cheyney University* rejected both what it characterized as the "extreme deference" standard, under which "as long as the issue is covered by the agreement, the inquiry is at end"[4] and

3. Specifically Section 11(d) of the Act of April 25, 1927, P.L. 381, *formerly* 5 P.S. § 171(d), repealed by the Act of October 5, 1980, P.L. 693.

4. In this regard, the court cited *Leechburg Area School District v. Dale (Leechburg II)*, 492 Pa. 515, 424 A.2d 1309 (1981). In *Leechburg II*, Justice Nix applied a degree of deference described later, in *Cheyney University*, as

"language used by our court indicating a standard of review looking to the 'reasonableness' of the arbitrator's award." [5] It reaffirmed the "rationally derived" standard articulated in *Ludwig Honold Manufacturing Company v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969), quoted with approval in *Beaver County*, and concluded:

> The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Id.* at 149–50, 743 A.2d at 413.

The school district acknowledges that the usual scope of review of a grievance arbitration award under Act 195 calls for

"extreme deference." Subsequently, in a concurring opinion in *Cheyney University*, Mr. Chief Justice Flaherty explained that, "inherent in this view [that the inquiry ends if the issue properly defined is within the terms of the agreement] is that the arbitrator's interpretation must rationally be derived from those terms." 560 Pa. at 156, 743 A.2d at 417. Understood in this light, *Leechburg II* is not at variance with *Beaver, Cheyney University* and *Danville*.

5. In a footnote, the court in *State System of Higher Education (Cheyney University) v. State College University Professional Association*, 560 Pa. 135, 743 A.2d 405 (1999) cautioned against reviewing the reasonableness of the award itself under the guise of determining whether the arbitrator's decision is "rationally derived from" the parties' agreement. The court stated:

deference to the arbitrator's award so long as it draws its essence from the CBA. However, the school district contends that deference is not appropriate here because the arbitrator looked outside the confines of the CBA to find and resolve ambiguity as to the meaning of the word "furlough." The school district asserts that the word "furlough" is not ambiguous and means, as a matter of law, an impermanent separation in the nature of a suspension or layoff. The district therefore seeks our plenary review of the arbitrator's finding of ambiguity and his reliance on extrinsic evidence to determine the parties' intent.

■ We believe that in making its argument the district fails to appreciate the differences between the similar but quite distinct procedures appropriate in the arbitration and trial court settings. While the ultimate question remains the same—the intent of the parties—its determination is reached by different paths. Where a contract case is tried to a judge and jury, the trial judge determines as a threshold issue whether the contract language is ambiguous or unambiguous as a matter of law. If the court finds the language to be clear and unambiguous, it does not submit the issue to the jury, but itself decides the question of the parties' intent based exclusively upon the terms of the agreement. *Steuart v. McChesney*, 498 Pa. 45, 48–49,

> We acknowledge that the terms "rational" and "reasonable" have often been used interchangeably as part of the standard of review. Indeed, in common parlance, the two words have similar meanings. However, we find that in the context of review of an Act 195 labor arbitration award, determining an award to rationally be derived from a collective bargaining agreement connotes a more deferential view of the award than the inquiry into whether the award is reasonable. An analysis of the "reasonableness" of an award too easily invites a reviewing court to ignore its deferential standard of review and substitute its own interpretation of the contract language for that of the arbitrator. Thus, we find that in this very limited context, a review of the "reasonableness" of an award is not the proper focus.
>
> *Id.* at 149 n. 8, 743 A.2d at 413 n. 8.

444 A.2d 659, 661 (1982); *Seven Springs Farm, Inc. v. Croker,* 748 A.2d 740, 744 (Pa.Super.2000). On the other hand, if the court finds the language to be ambiguous, the jury may hear and consider extrinsic evidence to determine the parties' intent. *Hutchison v. Sunbeam Coal Corp.* 513 Pa. 192, 200–01, 519 A.2d 385, 390 (1986); *Smith v. SEPTA,* 707 A.2d 604, 609 (Pa. Cmwlth.1998); *Metzger v. Clifford Realty Corp.,* 327 Pa.Super. 377, 476 A.2d 1, 5 (1984). As noted in *Beaver County,* however, (in spite of considerable appellate language to the contrary) whether decided by judge or jury, the ultimate question of the parties' intent is one of fact. 473 Pa. at 592–94, 375 A.2d at 1274–75.[6]

■ Conversely, in the arbitration context the distinction between ambiguous and unambiguous contracts is of no *evidentiary* significance. As the court opined in *Beaver County:*

> To ... imply that the standard of review of an arbitrator's interpretation of a collective bargaining agreement turns on the common law question of whether the agreement is "ambiguous" and therefore to be interpreted by the finder-of-fact (jury) or "unambiguous" and to be interpreted by the court ... is not the correct approach.
>
> ....
>
> The division effected by the common law between ambiguous writings (interpreted by the jury) and unambiguous writings (interpreted by the court as a "question of law") is logically inapplicable to interpretation questions which arise in arbitration....
>
> ....
>
> To state the matter more precisely, where a task of an arbitrator, PERA or

otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of *its language, its context, and any other indicia of the parties' intention* . . . ."

473 Pa. at 592–94, 375 A.2d at 1274–75 (quoting *Ludwig Honold Mfg.,* 405 F.2d at 1128) (emphasis added). In other words, while the common law of contracts allows the factfinder to consider all evidence relevant to the determination of the parties' intent only if the court has found the contract language to be ambiguous, the evidence properly considered by the arbitrator as factfinder is not so limited. *See School Dist. of Allentown v. Hotel and Restaurant Employees,* 654 A.2d 86, 89 (Pa.Cmwlth.1995). As our Supreme Court has most recently noted:

> [W]hen discerning the intent of the parties, the arbitrator is not confined to the express terms of the collective bargaining agreement. Our court has stated that an arbitrator's award may draw its essence from the collective bargaining agreement if the arbitrator's "interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention."

*Danville Area Sch. Dist. v. Danville Area Educ. Ass'n, PSEA/NEA,* 562 Pa. 238, 248, 754 A.2d 1255, 1260 (2000)(citations omitted).

Moreover, as was pointed out in the concurring opinion to *Delaware County v.*

---

**6.** In *Community College of Beaver County v. Community College of Beaver County, Society of Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977), the court stated:

> For a variety of reasons the common law has long thought it best to leave to the court rather than the jury the essentially factual question of what the contracting parties

intended. This fact-finding function exercised by the court is denominated a "question of law," therefore not because analytically it is a question of law but rather to indicate that it is the trial judge, not the jury, to whom the law assigns the responsibility for deciding the matter.
> *Id.* at 592, 375 A.2d at 1275.

*Delaware County Prison Employees Independent Union:*

In further support of a broad approach to ascertaining the intent of the parties, it should be noted that the United States Supreme Court has determined that in addition to general contract construction, a collective bargaining agreement must be viewed in the context of the "industrial common law." Specifically, in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409, 1417 (1960), the Court noted that "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."

552 Pa. 184, 195 n. 5, 713 A.2d 1135, 1141 n. 5 (1998) (Cappy, J. concurring). Finally, in *Danville*, the court noted:

More specifically with regard to past practice, as stated in Frank and Edna Asper Elkouri's seminal work on arbitration, *How Arbitration Works*,

Unquestionably custom and past practice constitute one of the most significant factors in labor-management arbitration. Evidence of custom and past practice may be introduced for any of the following major purposes: (1) to provide the basis for rules governing matters not included in the written contract; (2) to indicate the proper interpretation of ambiguous contract language; or (3) to support allegations that clear language of a written contract has been amended by mutual action or agreement.

Elkouri and Elkouri, *How Arbitration Works* 437 (4th ed.1988). *Danville*, at 248 n. 2, 754 A.2d at 1260 n. 2.

■ Nevertheless, to say that an arbitrator must consider extrinsic evidence in interpreting a CBA is not to say that the law draws no distinction between ambiguous and unambiguous language in the arbitration context. The intent of the parties to a CBA, like any other contract, is deemed to be embodied in "what the agreement manifestly expressed, not what the parties may have silently intended." *Delaware County v. Delaware County Prison Employees Indep. Union*, 552 Pa. at 190, 713 A.2d at 1138. Thus, "when the words [of a CBA] are clear and unambiguous the intent is to be gleaned exclusively from the express language of the agreement." *Id.* at 189, 713 A.2d at 1137. This statement should not be read in the sense of exclusion or disregard of evidence, as though we expect an arbitrator to act like a trial judge and rule on the question of ambiguity, then based upon this ruling "charge" himself as factfinder whether to consider or disregard the extrinsic evidence. To infer from this statement that an arbitrator should shut his eyes to probative evidence would place *Delaware County* at odds with other recent decisions of the court, and we do not so read it. Rather, *Delaware County* stands only for the principle that where the contract language is truly susceptible of only one meaning, and thus unambiguous as a matter of law, the arbitrator may not deem it to mean something else.[7] Although the opinion of Mr. Justice Flaherty announcing the judgment of the court in *Delaware County* was joined in by only three justices, the concurring opinion of Mr. Justice Cappy (joined by Mme. Justice Newman) did not in any way take issue with this general principle. Instead, while Justices

---

**7.** Indeed, although the clarity of language used in the CBA should have a significant impact upon the arbitrator's *factual* determination of the parties' intent, the *legal question* of whether a CBA is ambiguous will not materially affect the process by which an arbitrator goes about his business of interpretation. The primary significance of the legal issue relates to the manner in which the reviewing court does its job, i.e., the amount of deference due the arbitrator's interpretation.

Flaherty, Zappala and Castille found the terms to be clear and unambiguous as a matter of law and, as a result, found that the arbitrator's contrary interpretation was "a plain departure from [and thus did not draw its essence from] the terms of the agreement" [552 Pa. at 190, 713 A.2d at 1138], Justices Cappy and Newman found the CBA ambiguous as that term is defined in the law.[8] Accordingly, they would have deferred to the arbitrator's interpretation of the contract terms. More recently, in *Danville,* the court continued to draw the distinction between ambiguous and unambiguous labor agreements.[9] Quite clearly, then, the distinction between ambiguous and unambiguous language is significant to the analysis of at least the majority of justices.

From the analysis of all of the court's recent opinions, and not focusing upon any one passage in a vacuum, we are informed that an arbitrator must consider all the circumstances probative of the parties' intent and, where the CBA is ambiguous, may rely upon both the language of the agreement and the extrinsic evidence in his interpretation. In this situation, the arbitrator's determination is to be accorded great deference. Conversely where, even in light of all the probative circumstances it must be said that the contractual language is clear and unambiguous as a matter of law, our deference is at an end. It should be noted that even in the latter situation the reviewing court applies the essence test, because where the contractual language is clear and unambiguous as a matter of law, a contrary "interpretation" cannot be said to rationally or logically be derived from the CBA.

Applying these mandates to the case at issue, we believe the arbitrator properly considered all pertinent evidence and correctly determined that the term "furlough" as used in the CBA was ambiguous, and not defined as a matter of law. The district's contrary argument is based upon the undeniable principle that the arbitrator's interpretation of the CBA cannot be inconsistent with specific provisions of the School Code.[10] See Section 703 of Act 195, 43 P.S. § 1101.703. *See also Mifflinburg Area Educ. Assoc. v. Mifflinburg Area Sch. Dist.,* 555 Pa. 326, 333 n. 5, 724 A.2d 339, 343 n. 5 (1999). The district contends that in *Norwin School District v. Chlodney,* 37 Pa.Cmwlth. 284, 390 A.2d 328 (1978) we defined the term "furlough" under the School Code. We do not read *Norwin* to have done so. The court in *Norwin* held that a transfer to part-time status was a demotion under Section 1151 of the School Code (appeal of demotion must be taken to Secretary of Education) and distinguished this from a suspension under Section 1124 (appeal of suspension governed by Local Agency Law under which Secretary has no jurisdiction). In making the distinction, the court stated in dicta that a suspension is in the nature of a furlough, an impermanent separation or a lay-off. *Id.* at 330. This conclusion does not define "furlough" so as to make a different construction of the term as used in a CBA a violation of the School Code. The word "furlough" is not defined in Act 195, the School Code or the parties' CBA.[11] Accordingly, we disagree with the district's contention that the term has only one meaning as a matter of law.

8. "As a general proposition, a contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. 8 P.L.E. Contracts § 146." 552 Pa. at 193–94, 713 A.2d at 1140.

9. The opinion of the court in *Danville* was authored by Justice Cappy and joined by Justice Newman.

10. Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

11. The word is defined in Section 3 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.3. This Act is not applicable to the public school teachers who filed the present grievance.

That being said, there seems little question that the arbitrator's conclusion as to the parties' intent is rationally derived from the CBA viewed in light of its language, its context, and the surrounding circumstances. The testimony before the arbitrator fully supports the finding that the parties' intended to bar demotions to part-time under the "no furlough" provision. The modification to the 1991 – 1996 CBA at issue in this case was effected by a supplemental agreement that expressly incorporates the resolution of the school board wherein the board reinstated two teachers with pending grievances, Zerfoss for a 1993 demotion to part-time and Levandoski for a 1993 suspension. The board made their reinstatement contingent upon withdrawal of their 1993 claims and assented to the modification of the CBA. It is difficult to reconcile an interpretation providing no protection against demotion to part-time with the withdrawal of Zerfoss's 1993 claim for demotion to part-time status. Such an interpretation would provide her with no protection against similar demotion just after withdrawal of her claim. During discussions as to the scope of the "no furlough" provision, representatives for the school district specifically agreed that the provision barred lay-offs, suspensions, leave without pay and demotions. Further, a member of the school board sought to reassure members of the Association that the "no furlough" prohibition was sufficiently broad in its scope by saying that the school board was not out to trick anybody and was not going to change anyone's status. At the conclusion of the negotiations, the Association's President, Karen Metta, understood that under the "no furlough" provision the entire bargaining unit obtained the same job protection as had been proposed for Zerfoss and Levandoski in their private negotiations with the board for reinstatement and withdrawal of their 1993 claims. This protection encompassed a three-year prohibition against a demotion from full to part-time. In sum, the evidence supports the arbitrator's finding that the parties' intended that the "no furlough" provision bar the grievants' demotion to part-time. Plainly, the award was rationally derived from the CBA.

The order of the court of common pleas sustaining the award is affirmed.

## ORDER

AND NOW, this 19th day of October, 2000, the order of the Court of Common Pleas of Luzerne County in the above captioned matter is hereby affirmed.