Christopher ERB, Petitioner,

v.

## WORKERS' COMPENSATION APPEAL BOARD (STERIS CORPORATION), Respondent.

Commonwealth Court of Pennsylvania.

substantial evidence, an error of law was committed or constitutional rights were violated. *Schriver v. Workers' Compensation Appeal Board (Department of Transportation)*, 699 A.2d 1341 (Pa.Cmwlth.1997).

Submitted on Briefs Oct. 18, 2002.
Decided Dec. 13, 2002.

Joseph B. Steele, Erie, for petitioner.

John W. Draskovic, Erie, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, J., and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

Christopher Erb petitions for review of an order of the Workers' Compensation Appeal Board that affirmed the decision of a Workers' Compensation Judge that granted Steris Corporation's Modification/Suspension Petition and ordered that Erb's average weekly wage for the time he was not working be calculated for a 40–hour week, without regard for overtime. We affirm the grant of the petition but reverse on the issue of wage calculation and remand on that issue alone.

Christopher Erb was laid off from his employment with Steris Corporation from September 13, 1996 through August 1, 1997. He returned to work on August 2, 1997 and suffered a work-related injury in the course and scope of his employment on September 8, 1997. He returned to work again on October 29, 1997. Steris filed a Petition to Modify/Suspend. As part of the record, the parties stipulated that

> [b]ased upon overtime records of an employee of Steris Corporation positioned similarly to that of the claimant, the parties agree that if claimant was working at Steris [from September 13, 1996 to August 2, 1997] he would have been asked to work an average of 7.5 overtime hours per week for the period beginning September 1, 1996 through September 7, 1997.

(Hearing Transcript, September 23, 1998; Bureau Exhibit "2")

The parties agree that Erb's average weekly wage should be calculated according to Section 309(d.2) of the Workers'

Compensation Act[1], 77 P.S. § 582(d.2), which provides,

> If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the Employee was expected to work per week under the terms of employment.

The collective bargaining agreement between Steris and Erb's union provides,

> The normal work week for all employees covered by this Agreement will be from Monday through Friday inclusive and will consist of forty (40) hours. No work week of thirty two (32) hours will be provided for except by mutual agreement. The normal work day shall consist of eight (8) hours of work, exclusive of an unpaid lunch period. The provisions do not, however, constitute a guarantee of any hours of work on any day or for any week.

(Hearing Transcript, April 29, 1998, Employer's Exhibit "B")

The WCJ granted Steris' petition and calculated Erb's average weekly using the 40–hour "normal work week" described in the collective bargaining agreement. Erb appealed only that part of the WCJ's decision to the Board, arguing on appeal that the WCJ should have calculated his average weekly wage by taking into account the overtime that he would have been paid since that overtime was part of his "terms of employment." The Board affirmed the WCJ and this appeal followed.

The question we are asked to determine is whether the average weekly wage of an employee who would have been expected to work overtime had he been employed during a period of layoff contemplated under Section 309(d.2) should be calculated by including the overtime pay he would have earned had he not been laid off.[2]

We begin our analysis by commending the attorneys for both parties for realizing that this was a case of first impression and for working together to present it to us in a clear and concise manner.

■ Steris cites our decision in *Greater Nanticoke Area School District v. Greater Nanticoke Area Education Association*, 760 A.2d 1214 (Pa.Cmwlth.2000) in support of its argument that we should interpret the phrase "terms of employment" in Section 309(d.2) strictly and use the figure of 40 hours per week as specified in the collective bargaining agreement. In *Greater Nanticoke* we said, "[W]hen the words of a [collective bargaining agreement] are unambiguous, the intent of the parties is to be gleaned exclusively from the express language of the agreement.", *Id.* at 1219 (quoting *Delaware County Independent Employees Union*, 552 Pa. 184, 713 A.2d 1135 (1998)). We cannot apply this language here, however, because the cited section of the agreement in this case is not written to be strictly interpreted. If it were, the employees who are to benefit from it would, under Steris' interpretation, be forbidden to work overtime, yet both the union and management surely intended that overtime was to be part of the "terms of employment" for union workers when they entered into the agreement. We are persuaded by Erb's argument when he reminds us that the ultimate goal of the workers' compensation program is

---

1. Act of June 2, 1915, P.L. 736, *as amended.*

2. Our standard of review is limited to determining whether findings are supported by substantial evidence, an error of law was committed or constitutional rights were violated. *Schriver v. Workers' Compensation Appeal Board (Department of Transportation)*, 699 A.2d 1341 (Pa.Cmwlth.1997).

to make the injured employee whole. *O'Brien v. Workers' Compensation Appeal Board (City of Philadelphia)*, 780 A.2d 829 (Pa.Cmwlth.2001). And we ourselves recently said, "The Workers' Compensation Act must be liberally construed to effectuate its humanitarian purposes with borderline interpretations resolved in favor of the injured employee." *Caso v. Workers' Compensation Appeal Board*, 790 A.2d 1078 (Pa.Cmwlth.2002), *petition for allowance of appeal granted*, 569 Pa. 710, 805 A.2d 526 (2002).

■ Accordingly, we interpret Section 309(d.2) in favor of the injured employee here in concluding that where it is clear that an employee would have been expected to work overtime had he been employed during a period when he was laid off, that overtime should be considered as part of the terms of his employment when calculating his average weekly wage under Section 309(d.2). Therefore, the order of the Workers' Compensation Appeal Board in this matter is reversed and the matter is remanded with instructions to recalculate benefits consistent with this opinion.

### ORDER

AND NOW, this 13th day of December 2002, the order of the Workers' Compensation Appeal Board in this matter is affirmed insofar as it grants Steris' Modification/Suspension Petition, reversed on issue of the calculation of benefits, and remanded to the Workers' Compensation Judge with instructions to recalculate Petitioner's benefits consistent with this opinion.

Jurisdiction relinquished.