### ALLEGHENY VALLEY SCHOOL DISTRICT, Appellant

v.

### ALLEGHENY VALLEY EDUCATION ASSOCIATION.

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2008.

Decided March 7, 2008.

been violated or errors of law have been committed. Section 704 of the Administrative

Agency Law, 2 Pa.C.S. § 704.

Martin W. Sheerer, Pittsburgh, for appellant.

Mary Jo Miller, Pittsburgh, for appellee.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Allegheny Valley School District (School District) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) confirming an arbitration award that found the 2004–2009 collective bargaining agreement (CBA) entered into with the Allegheny Valley Education Association (Association) allows an employee to use sick leave to attend a family member's medical appointment. The School District contends that the Arbitrator's award is not rationally derived from the language of the CBA.

The School District and Association are parties to the CBA that was effective on July 1, 2004, and continues to run through June 30, 2009. The provision at issue here is Article VII, Section 8 of the CBA, which provides, in pertinent part:

**Section 8: Medical Appointments**

Sick leave, personal leave, or earned compensatory time can be used for medical appointments. These must be taken in one-half day increments.

Because the School District denied an employee's request to use sick leave for a family member's medical appointment, the

Association filed a grievance in which it asserted that by denying sick leave for this purpose, the School District violated Article VII, Section 8 of the CBA.[1] The School District denied the grievance, and the matter was submitted to arbitration.

Before the arbitrator, the Association presented several witnesses to discuss the use of sick leave for family members' medical appointments. Kenneth Herbst (Herbst), a retired teacher, past Association President, and a participant in the negotiation of the CBA, testified that Association members had a historical right to use sick leave for family medical appointments. He stated that from 1974 to 1993, bargaining unit members were allowed to use unlimited leave time for medical appointments. According to Herbst, the parties agreed to limitations on the leave in 1993. He testified that this language remained unchanged until the adoption of the 2004–2009 CBA. During negotiations for the current CBA, the parties renegotiated the leave provisions based on the District's concern over administering the emergency leave provisions of the prior CBA. These negotiations resulted in new leave provisions in the CBA, including Article VII, Section 8, the provision at issue in this matter. Herbst also testified that the previous School Superintendent, Charles Territo (Territo), drafted the new CBA language, and both parties intended for the new CBA to preserve employees' rights to use sick leave for family members' medical appointments. Herbst added that during a staff meeting, Territo confirmed the right of the staff to use sick leave for family members' medical appointments. Other witnesses called by the Association corroborated Herbst's testimony as to Territo's statements that they were permitted to use sick leave for family medical appointments after the new CBA was in effect.

At the arbitration, the District did not dispute the Association's account of the events leading up to the inclusion of Article VII, Section 8 into the CBA. In fact, Gabriel Ziccarelli, the School District's own witness and the current Superintendent admitted that in a discussion with Herbst after the CBA was in effect, Dr. Territo informed him that sick leave could be used for family medical appointments. The School District instead argued that all evidence introduced by the Association relating to the intent of the disputed provision violated the parole evidence rule because Article VII, Section 8 was clear and unambiguous. As such, the School District argued the arbitrator was foreclosed from the use of any evidence surrounding the adoption of the pertinent language or conduct thereafter. It also asserted that this provision was clear and unambiguous because Article VII, Section 1, stated "Sick Leave was to be interpreted in accordance with the School Code" and under 1154(a) of the Public School Code[2], 24 P.S. § 11–1154(a),[3] sick leave only addressed the ina-

1. The grievance provides, in relevant part:
   Article VII Section 8 of the current labor agreement provides employees with the right to use sick leave, personal days or earned compensatory days for medical appointments. During the 2004–2005 school year, this practice was never questioned. During the 2005–2006 school year, the district began to question who the medical appointments were for. During negotiations, Dr. Territo agreed that this clause would apply to employees and families.

   This was intended to replace the 21 periods (3 days) of emergency time for doctor appointments that was in our previous contract. (Reproduced Record at 117a.)

2. Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 11–1154.

3. Section 1154(a) of the Public School Code, 24 P.S. § 11–1154, provides in relevant part:
   (a) In any school year whenever a professional employe is prevented by illness or

bility of an employee to perform duties due to matters of the employee's health, not another individual or a family member.

The Arbitrator sustained the Association's grievance and ordered the School District to permit employees to use sick leave for family members' medical appointments. In arriving at that conclusion, the Arbitrator found that "the record evidence presented leads to the conclusion that the language in dispute is not clear and unambiguous and to arrive at the parties' intent requires consideration of all of the relevant evidence proffered by the parties in the hearing." (Reproduced Record at 175a.) The Arbitrator also rejected the School District's argument involving Section 1154(a) of the School Code, given that another subsection of the same statute, Section 1154(e) of the Public School Code, 24 P.S. § 11–1154(e), provided:

> Any board of school directors may adopt rules or regulations pertaining to the payment of salaries of employees when absent from duty, extending the period of leave with or without pay in excess of that herein provided, or authorizing leaves with pay for other purposes.

In light of this evidence, the Arbitrator concluded that "the parties' long-standing agreement to permit the use of sick leave to attend family members' medical appointments falls within the term 'other purposes' and is not prohibited by the statute." (Reproduced Record at 179a.) The School District appealed to the trial court, which after reviewing the evidence presented at the arbitration, found the arbitrator's interpretation to be rationally derived from the CBA and affirmed the award. On appeal to this Court, the School District again contends that the award is not rationally derived from the CBA because the Arbitrator impermissibly considered extrinsic evidence to ascertain the parties' intent, despite the CBA's clear and unambiguous language.

■ In reviewing a labor arbitration award against a claim that an arbitrator's interpretation of a CBA was improper, the standard of review is the essence test. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)* 560 Pa. 135, 743 A.2d 405 (1999). The essence test uses a two-prong analysis: (1) the reviewing court must determine whether the issue falls within the terms of the CBA and, if so, (2) the reviewing court must determine whether the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. *Id.* at 150, 743 A.2d at 413. In *Cheyney,* our Supreme Court noted that a reviewing court should not inquire into whether the Arbitrator's decision is reasonable or even manifestly unreasonable, but rather the question should be whether the award may in any way be rationally derived from the agreement between the parties, "viewed in light of its language, its context, and any other indicia of the parties' intention." *Id.* at 146, 743 A.2d at 411, quoting *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977), citing *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969). In addition, a court will only vacate an arbitrator's award "where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Cheyney,* 560 Pa. at 150,

---

accidental injury from following his or her occupation, the school district shall pay to said employe for each day of absence the full salary to which the employe may be entitled as if said employe were actually engaged in the performance of duty for a period of ten days.

743 A.2d at 413. Because the School District does not dispute that the issue falls within the terms of the CBA, we address the second prong of the essence test only.

We discussed what an arbitrator may consider in the interpretation of a CBA's provisions in *Greater Nanticoke Area School District v. Greater Nanticoke Area Educational Association,* 760 A.2d 1214 (Pa.Cmwlth.2000). In that case, a school district appealed an arbitrator's award which found the school district to be in violation of the furlough provisions of the CBA when it demoted 10 full-time employees to part-time status. Similar to the argument advanced in this matter, the school district in *Greater Nanticoke* asserted that the arbitrator's interpretation was not rationally derived from the CBA because the word "furlough" was not ambiguous and meant as a matter of law an impermanent separation in the nature of a suspension or lay-off. In rejecting that argument and finding that the arbitrator's interpretation was rationally derived from the CBA, we explained that arbitration was unlike a common law action where a jury could decide the meaning of contract provision only if the trial judge determined as a matter of law that the provision was ambiguous. *Id.* at 1218. Instead, we noted that an arbitrator could use extrinsic evidence to determine the parties' intent stating "in the arbitration context the distinction between ambiguous and unambiguous contracts is of no evidentiary significance." *Id.* We went on to note that our Supreme Court in *Danville* stated:

> [W]hen discerning the intent of the parties, the arbitrator is not confined to the express terms of the collective bargaining agreement. Our court has stated that an arbitrator's award may draw its essence from the collective bargaining agreement if the arbitrator's "interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention."

\* \* \*

> More specifically with regard to past practice, as stated in Frank and Edna Asper Elkouri's seminal work on arbitration, How Arbitration Works,
>
> Unquestionably custom and past practice constitute one of the most significant factors in labor-management arbitration. Evidence of custom and past practice may be introduced for any of the following major purposes: (1) to provide the basis for rules governing matters not included in the written contract; (2) to indicate the proper interpretation of ambiguous contract language; or (3) to support allegations that clear language of a written contract has been amended by mutual action or agreement. Elkouri and Elkouri, *How Arbitration Works* 437 (4th ed.1988).

*Id.* at 1218–19, (quoting *Danville,* 562 Pa. at 248 n. 2, 754 A.2d at 1260 n. 2.)

However, we cautioned that while an arbitrator has great latitude to decide what the language of a CBA means and may use extrinsic evidence to determine what the parties' intended it to mean, that does not imply that an arbitrator has the unfettered discretion to make an interpretation based on some notion, unsupported by evidence or the language of the contract, as to what the parties meant. *Id.* at 1219, quoting *Delaware County v. Delaware County Prison Employees Independent Union,* 552 Pa. 184, 190, 713 A.2d 1135, 1138; ("the inquiry must focus on what the agreement manifestly expressed, not what the parties may have silently intended.")

■ In this case, Article VII, Section 8 of the CBA did not manifestly express that sick leave could not be taken for family

members' medical appointments and, as the Arbitrator found, Section 1154(e) of the Public School Code, 24 P.S. § 11–1154(e) gave schools districts broad discretion to award leave. The Arbitrator did not rely on the silent intention of the parties in arriving at his interpretation of the CBA, but rather on the undisputed testimony that both the School District and the Association agreed during negotiations of the CBA that an employee could use sick leave for family members' medical appointments and that such leave was granted under this contract. Based on this evidence, the Arbitrator concluded that the parties' intended Article VII, Section 8, to permit employees to use sick days for the purpose of attending the medical appointments of family members. After consider-ation of the CBA's language, the initial agreement of both the School District and the Association and the custom and practice of the parties, we find the Arbitrator's interpretation to be rationally derived from the CBA. Accordingly, the decision of the trial court is affirmed.

### *ORDER*

AND NOW, this *7th* day of *March*, 2008, the order of the Court of Common Pleas of Allegheny County is affirmed.