**PENNS MANOR AREA SCHOOL DISTRICT, Appellant**

v.

**PENNS MANOR AREA EDUCATIONAL SUPPORT PERSONNEL ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 6, 2008.

Decided July 17, 2008.

David P. Andrews, Altoona, for appellant.

William K. Eckel, Johnstown, for appellee.

Lynne L. Wilson, General Counsel, Harrisburg, for amicus curiae, PA State Education.

BEFORE: McGINLEY, Judge, SMITH–RIBNER, Judge, and KELLEY, Senior Judge.

Opinion by Judge McGINLEY.

This is an appeal from the Court of Common Pleas of Indiana County's (trial court) denial of Penns Manor School District's (District) Petition to Vacate the Arbitrator's Award which sustained the Grievance filed by Penns Manor Educational Support Association (Association).

The District and the Association are parties to a collective bargaining agreement (CBA). The members of the Association's bargaining unit are custodial, maintenance and cleaning employees (Custodians).

The District frequently scheduled events at the high school and elementary school on weekends. Custodians were offered the chance to work overtime during scheduled weekend events. The District would post sign-up sheets for the Custodians to request overtime. If more than one Custodian signed, the CBA provided the procedure to determine which Custodian would be awarded the overtime posting. Generally, it was based on seniority and rotation.

When working overtime on weekends, Custodians opened the doors to the building and turned the lights on. They would perform other tasks assigned by the management during the event, such as sweeping and polishing the floors. After the event, the lights were turned off and the building locked.

In November 2006, the District hired a new Superintendent, Thomas Kakabar (Superintendent Kakabar). After a review of the District's operations and work schedules, Superintendent Kakabar concluded that when District employees used a school building for a weekend event, overtime for custodial and maintenance

employees was unnecessary. Superintendent Kakabar determined that employees of the District, such as coaches and teachers, could simply use their District-issued swipe cards to let themselves into the building, turn the lights on and lock the doors afterwards. Superintendent Kakabar continued to offer custodial and maintenance employees the opportunity to work overtime whenever events scheduled at the District's school buildings involved groups not affiliated with the school. Beginning with the Thanksgiving holiday weekend of November 24, 2006, Superintendent Kakabar stopped scheduling overtime for weekend events that were supervised by District employees.

The Association filed a Grievance and the parties proceeded through the grievance process to the arbitration hearing. The Association presented evidence that established that from 2004–2007, whenever events were scheduled on weekends, overtime hours were offered to Custodians. In the Association's view, the change instigated by Superintendent Kakabar amounted to a unilateral transfer of bargaining unit work. The Association also argued that the opportunity for its members to work overtime on weekends in the past amounted to a binding "past practice" which required the District to always make overtime available on weekends, regardless of whether the event was school-related.

The District, on the other hand, relied on what it described as unambiguous language of the CBA, in particular, Article VIII Section 2 which states that "Employer [District] shall be the sole judge of the necessity of overtime." The District argued that the plain language of the CBA authorized the District to determine whether employee overtime was necessary.

The Arbitrator found that Supervisor Kakabar did not assign any of the Associ-

ation's bargaining unit work to non-bargaining unit employees. However, the Arbitrator concluded that the District had violated the CBA by not providing Custodians the opportunity to work weekend overtime, when the weekend activity involved school related groups, as it had in the past. The Arbitrator ultimately agreed with the Association and found that a "past practice" pertaining to weekend overtime had developed between the District and the Association. Whenever there was an activity at the school on the weekend, whether run by the school or not, the District offered overtime to Custodians. The Arbitrator found that, despite Article VIII Section 2, this was a long standing practice and the District could not eliminate "after-hours overtime" unilaterally without the Association's consent.

> However, to be given sufficient weight for a past practice to alter clear and unambiguous language, there must be a mutual agreement to amend or a long standing practice in which the parties have seemingly adopted.
> Should either of the above be the case, the parties would then have an enforceable practice thereby effectively deleting the unambiguous language of their Collective Bargaining Agreement.
> The question remains is there such an enforceable past practice between the parties?
> This Arbitrator finds that the answer to the question above is yes. There can be no dispute that there was a past practice between the Association and the District. Testimony and evidence provided by both parties attest to the several year old practice. Such was an established practice regularly expected by the Custodians.

Arbitrator's Award, May 17, 2007, at 19; Reproduced record (R.R.) at 39a.

The School District filed its timely petition for review and application to vacate the Arbitrator's award with the trial court.

The trial court did not agree that the controversy "in its essence involve[d] overtime." Trial Court Opinion, October 16, 2007, at 4. Rather, in the trial court's view, this case involved a claim of improper transfer of job duties from Custodians to other District employees. The trial court held that because the parties' CBA did not contain job descriptions for Custodians, the Arbitrator was justified in relying upon the parties' conduct or past practice in ruling that opening doors and turning on lights at weekend events was an enforceable term and condition of employment that could not be derived from the terms of the CBA.

It was on this basis that the trial court upheld the Arbitrator's award and concluded that the District unilaterally changed the manner in which the District assigned bargaining unit work to Custodians by having non-bargaining unit employees unlock and lock doors, and turn on lights, at the District's buildings during weekend events.

On appeal, the District raises two issues: (1) whether the trial court erroneously affirmed the Arbitrator's award on the basis of "bargaining unit work" when the Arbitrator decided the case on the basis that weekend overtime had become a term and condition of employment; and (2) whether the Arbitrator's determination that the parties entered into a binding "past practice" was rationally derived from the CBA which unambiguously stated that "Employer shall be the sole judge of the necessity of overtime."

 This Court's standard of review in this matter is the "essence test," a standard that requires great deference to an arbitrator's interpretation of the CBA.

*Westmoreland Intermed. Unit # 7 v. Westmoreland Intermed. Unit # 7 Class-room Asst. Educ. Support Pers. Ass'n, PSEA/NEA*, 595 Pa. 648, 939 A.2d 855 (2007). The essence test is comprised of two prongs. The first prong requires the Court to determine whether the issue as properly defined was within the terms of the CBA. The second prong requires the Court to determine whether the arbitrator's interpretation of the CBA was rationally derived therefrom. *Id.*, 595 Pa. at 661–62, 939 A.2d at 863.

In *State Sys. of Higher Educ. (Cheney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999), our Supreme Court noted that a reviewing court should not inquire into whether the Arbitrator's decision is reasonable or even manifestly unreasonable, but rather the question should be whether the award may in any way be rationally derived from the agreement between the parties, "viewed in light of its language, its context, and any other indicia of the parties' intention." *Id.* at 146, 743 A.2d at 411. Because the District does not dispute that the issue falls within the terms of the CBA, this Court addresses the second prong of the essence test only.

Initially, the District asserts that the trial court erred when it upheld the Arbitrator's award on the basis of bargaining unit work because it incorrectly addressed the issue in terms of whether the grievance concerned the unilateral transfer of bargaining unit work as opposed to the District's "past practice" of offering Custodians after-hours overtime. The District maintains that the Arbitrator rejected the Association's arguments regarding the unilateral reassignment of bargaining unit work and found as a matter of fact that the District did not reassign bargaining unit work.

Because the focus of this Court's review of a grievance arbitration award is not on the trial court's reasoning or whether the trial court committed an error of law, the trial court's decision is of little consequence to this Court's review.

Regardless of whether the trial court incorrectly characterized the issue as one involving bargaining unit work as opposed to overtime, it is not grounds for reversing the Arbitrator's award if it is otherwise sound. Rather, as stated above, it is this Court's duty to apply the "essence test" to determine if the award was genuinely without foundation in or fails to logically flow from the CBA.

Turning to the District's substantive argument, the District asserts that the Arbitrator's award failed to draw its essence from the CBA because it failed to give effect to the CBA's clear and unambiguous language which made the District the "sole judge" of employee overtime. The District maintains that evidence of past practices was not appropriate where the language is clear and there is nothing to clarify. It contends that Article VII, Section 2 of the CBA clearly makes the School District "the sole judge of the necessity of overtime."

Evidence of "past practices" is used in arbitrations in four situations: (1) to clarify ambiguous language; (2) to implement contract language which sets forth only a general rule; (3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and (4) to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the CBA. *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 34, 381 A.2d 849, 852 (1977); *Central Susquehanna Intermediate Unit Edu. Ass'n v. Sus-*

*quehanna Intermediate Unit No. 16*, 74 Pa.Cmwlth. 248, 459 A.2d 889 (1983).

The meaning of "past practice" has been appropriately defined as follows:

> It must be shown to be the *accepted* course of conduct characteristically repeated in response to the given set of underlying circumstances. This is not to say that the course of conduct must be *accepted* in the sense of both parties having agreed to it, but rather that it must be *accepted* in the sense of being regarded by the [parties] involved as the *normal* and *proper* response to the underlying circumstances presented.

*County of Allegheny*, 476 Pa. at 34 n. 12, 381 A.2d at 852 n. 12 (emphasis in original).

▆ Here, the Arbitrator found that a past practice existed because for several years between 2004 and 2007 the District offered overtime to Custodians whenever there was a weekend activity at the school. The Arbitrator found that the District "being the sole judge of the necessity of overtime" had, by its longstanding practice, determined that the need for overtime was warranted at weekend functions, whether school related or not. Making overtime available to Custodians evolved into an employment condition the members came to expect was a normal and proper response to the scheduling of weekend events.

The District argues that the Arbitrator was wrong to rely on past practices because the parties' CBA contained clear and unambiguous language that directly governed the dispute. This Court must disagree.

In *Greater Nanticoke Area School District v. Greater Nanticoke Area Education Association*, 760 A.2d 1214 (Pa.Cmwlth. 2000), this Court rejected this argument, noting that an arbitrator could use extrinsic evidence to determine the parties' intent even where the CBA language in dispute is unambiguous.

> **[I]n the arbitration context the distinction between ambiguous and unambiguous contracts is of no *evidentiary* significance.** (Emphasis added) **To ... imply that the standard of review of an arbitrator's interpretation of a collective bargaining agreement turns on the common law question of whether the agreement is 'ambiguous' and therefore to be interpreted by the finder-of-fact (jury) or 'unambiguous' and to be interpreted by the court ... is not the correct approach.** (Emphasis added).

> **The division effected by the common law between ambiguous writings** (interpreted by the jury) **and unambiguous writings** (interpreted by the court as a "question of law") **is logically inapplicable to interpretation questions which arise in arbitration.** (Emphasis added)

> To state the matter more precisely, where a task of an arbitrator ... has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of *its language, its context, and any other indicia of the parties intention.* ...' 473 Pa. at 592–94, 375 A.2d at 1274–75 (quoting Ludwig Honold Mfg., 405 F.2d at 1128). (Emphasis in original)

In other words, while the common law of contracts allows the factfinder to consider all evidence relevant to the determination of the parties' intent only if the

court has found the contract language to be ambiguous, the evidence properly considered by the arbitrator as factfinder is not so limited.

*Greater Nanticoke Area School District,* 760 A.2d at 1217–18; *See also Allegheny Valley School District v. Allegheny Valley Education Association,* 943 A.2d 1021 (Pa. Cmwlth.2008); *United School District v. United Education Association,* 782 A.2d 40 (Pa.Cmwlth.2001) (an arbitrator is not limited by the general rules of contract interpretation where language in a labor agreement is found to be unambiguous).

This Court also finds the rationale in *General Teamsters, Chauffeurs and Helpers Local Union No. 249 v. Potter–McCune Company,* 412 F.Supp. 8 (W.D.Pa.1976), particularly compelling.

There, the labor union filed an action to vacate an arbitration award regarding the hiring practices of the employer. The labor union argued that the language of the collective bargaining agreement was clear and unambiguous regarding the company's hiring practices. In contrast, the employer argued that a practice had evolved over ten years where the union allowed a violation of the contract's clear language. The arbitrator denied the grievance finding that, due to the long-standing practice known to and condoned by the union, the labor union could not retroactively apply the requirements of the CBA. The District Court affirmed the arbitrator's decision:

> **The union here attacks the arbitrator's award solely on the grounds that it is contrary to the plain language of the pertinent labor agreement, and, given the arbitrator's finding that the language is clear and unambiguous,** the Court accepts as true the union's contention that there is present in this case a refusal to enforce the literal terms of the contract. **Standing alone,**

> **however, that refusal is not fatal to the instant award, for the "essence test" calls for an inquiry both less restrictive and less facile than the simple comparison of award and literal contract terms urged by the union. Indeed, a standard involving no more than that strict comparison would not only reduce the arbitrator to a mere cipher, approaching his task blindly to all save the express terms of the contract and stripped of the opportunity to utilize his special knowledge of the shop and industry, it would obviate the need for anything like the "essence test"...** (Emphasis added).

*General Teamsters,* 412 F.Supp. at 11–12.

Here, even assuming the "overtime" provision was unambiguous, the Arbitrator was not confined to the express terms of the collective bargaining agreement. This Court concludes that the Arbitrator's interpretation was rationally derived from the CBA, viewed in light of its language, its context, and evidence of the parties' long standing practice and intention regarding overtime. Because the Arbitrator was within his authority to consider the District's past and longstanding implementation of that provision as creating a separate and enforceable term and condition of employment which could not be changed unilaterally by the District, this Court must agree that the Arbitrator's decision was drawn from the essence of the parties' CBA.

The order of the trial court is affirmed.

### *ORDER*

AND NOW, this 17th day of July, 2008, the order of the Court of Common Pleas of Indiana County in the above-captioned case is hereby affirmed.