**Moshannon Valley Sch. Dist. v. Moshannon Valley Education Assoc.**

C.P. of Clearfield County, no. 2010-1370-CD.

*Brian K. Marshall,* for plaintiff.

*Randall C. Rodkey,* for defendant.

## OPINION

AMMERMAN, *J.,* October 26, 2010—On August 2, 2010, Moshannon Valley School District ("District") filed a Petition to Vacate Award of Arbitrator, thereby asking this Court to set aside an arbitrator's award in favor of Moshannon Valley Education Association ("Association"). The underlying dispute involved the discharge of Michelle Rupp, a non-tenured teacher or a "temporary professional employee" in school system parlance. The District hired Ms. Rupp as a full-time elementary teacher in August 2007. Per the School Code, District personnel evaluated Ms. Rupp twice per year. Ms. Rupp received a satisfactory rating at both of her first year evaluations, as well as the first half of her second year. However, for the second half of the 2008-09 school year, she received an unsatisfactory rating. Subsequently, she was dismissed based on that evaluation. On June 30, 2009, the District sent Ms. Rupp, by Certified Mail, Return Receipt Requested, a letter informing her of the discharge. Ms. Rupp signed for the letter on July 1, 2009. A grievance dated July 8, 2009, was then filed on Ms. Rupp's behalf by the Association.

Grievances of this sort are governed by a Collective Bargaining Agreement ("CBA"), which is effective July 1, 2008, through June 30, 2012. Generally, grievances must follow a multi-step process, beginning with the appropriate school principal. See CBA, VII. Grievance Procedures, at 4-5.

Grievances involving dismissals, however, follow a different procedure. Pursuant to the parties' CBA:

Grievances involving suspensions (furloughs) or dismissals shall bypass the procedures contained in Section B and shall not be submitted to the principal. Grievances involving suspensions (furloughs) or dismissals shall be presented directly to the Superintendent of the School District, in writing on the form provided by the Employer, within five (5) work days after the happening of the incident or matter upon which the grievance was based.

CBA, VII.F, at 5.

The District maintains this grievance was untimely filed on July 10, 2009, and was filed with the principal, not the superintendent, as required. The Association asserts the grievance was properly filed.

Despite the disagreement over this procedural issue, the matter moved through the grievance process and ultimately reached arbitration. On April 27, 2010, a hearing was held before Arbitrator Bernard S. Fabian, and on July 2, 2010, he issued his decision, sustaining the Association's grievance. In his opinion, Arbitrator Fabian noted the District did not address the timeliness issue at the hearing. Nonetheless, he considered the District's argument and found the grievance was timely filed. The District now requests this court vacate the arbitrator's decision, sustaining the Association's grievance.

In *State System of Higher Education (Cheyney University) v. State College University Professional Association,* the Pennsylvania Supreme Court enunciated the standard a court should utilize when reviewing an arbitration award. 560 Pa. 135 (1999) (*"Cheyney"*). Known as the "essence test," the two-prong analysis requires the

court first determine if the issue is properly defined within the terms of the CBA, and if so, to uphold the award so long as the arbitrator's interpretation can be rationally derived from the CBA. *Id.* at 150. "That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Id.* This standard is a highly deferential one, as evidenced by the numerous decisions upholding arbitrator's awards as rationally based. The rationale behind the respect given to arbitration awards was best memorialized by the U.S. Supreme Court in *United Steelworkers v. Enterprise Wheel & Car Corp.:*

> It is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

393 U.S. 593, 599 (1960).

Both parties agree that the first prong of the essence test is satisfied. Therefore, the limited issue before this court is whether the arbitrator's interpretation of the grievance procedure is logically derived from the CBA. The court finds it is.

The District argues that CBA unambiguously sets forth the procedure for filing a grievance, leaving no room for interpretation by the arbitrator. "[W]hen the words [of a CBA] are clear and unambiguous, the intent is to be gleaned exclusively from the express language of the agreement." *Greater Nanticoke Area Sch. Dist. V. Greater Nanticoke Area Educ. Ass'n,* 760 A.2d 1214, 1219 (Pa. Cmwlth.

2000) (quoting *Delaware County v. Delaware County Prison Employees Indep. Union*, 552 Pa. at 189). But *Delaware County* is applicable only where the contractual language is "truly susceptible of only one meaning, and thus unambiguous as a matter of law." *Id.*

In the instant case, the contract provision is not as clear as the District contends. The CBA requires grievances involving a discharge to be presented directly to the superintendent within five days of the matter giving rise to the grievance. First, the CBA does not describe how one "presents" a grievance. The arbitrator, based on his four decades of experience in labor relations, found a grievance is properly filed when it is reduced to writing and presented by mail or personally to the appropriate supervisor. Arbitrator's Award at 8. His rationale was that the Association would have done all it could do and it should not be punished for things outside of its control. *Id.* at 8-9. Absent contractual language clearly requiring something to the contrary, such logic is sound and will be upheld.

Furthermore, the record before the arbitrator appears to be deficient. On page 4 of his opinion, Arbitrator Fabian noted, "It was not disclosed as to specifically how this grievance was filed, i.e., was it filed and given to the Superintendent of Schools personally or was it sent through the U.S. mail or interdepartmental mail within the District." The District had the opportunity to present evidence of how it was filed, as well as with whom it was filed, but it failed to do so. The District also was silent when it was directly asked by the arbitrator at the hearing whether there were any procedural matters pending. *Id.* at 5. It was not until after the hearing in its post-hearing brief that

the District raised the timeliness issue with the arbitrator. First, the District does not get another bite at the apple simply because it disagrees with the decision, particularly when it did little to advance its argument in the first place. Had the issue been so important, which admittedly it was, the District should have presented witnesses or evidence clearly showing who received the grievance and in what manner it was received at the hearing. Second, and just as importantly, even though the issue was arguably waived, Arbitrator Fabian still considered the District's arguments, and yet, he expressly rejected them. *Id.* at 8.

Using the evidence that was before him, coupled with his own experience in the field, Arbitrator Fabian carefully explained how he interpreted the contract and concluded the grievance was timely "presented" within the five-day limit. Specifically, he found the Dismissal Letter was sent on June 30, 2009, and was signed for one day later. *Id.* at 7. He reasoned that July 2, 2009, was the day the clock started ticking in terms of the five-day limit because this was the first real opportunity, in his opinion, to react. *Id.* Therefore, excluding weekends, July 8, 2009, would have been the fifth and final day to file the grievance. *Id.* Because there was no evidence presented to contradict the date marked on the grievance, as discussed above, it was rational for the arbitrator to rely on that date - July 8, 2009 - and conclude the grievance was timely.

Moreover, the arbitrator concluding that July 2, 2009, was day 1 is not necessarily contrary to the contractual language. If the clock were to run from the date of the letter (here, June 30, 2009), the District would have no incentive to expeditiously inform any employee of his or her reprimand or discharge. Rather, it could drag its heels

for five days, then notify the employee, thus preempting him or her from challenging the decision. Therefore, it was not irrational for the arbitrator to exclude that day.

Likewise, the arbitrator cannot be faulted for excluding July 1, 2009, from the timeline. As Arbitrator Fabian explained in his opinion, it is unclear when Ms. Rupp received the letter that day. Perhaps the District offices closed at 3:30 p.m. that day, and Ms. Rupp's mail was not delivered until 4:30 p.m. Whatever the factual circumstances, the arbitrator could rationally conclude Ms. Rupp should not be penalized for failing to take action immediately upon receiving the notice. Thus, excluding this day was also not illogical.

The court's examples, above, are just a few hypotheticals the arbitrator could have considered in making his decision. There are feasibly many more illustrations that would have justified the arbitrator's decision. Similarly, there are probably an equal number of instances that would have demanded a different result. However, it is exactly this type of second-guessing that a court is to avoid in reviewing an arbitration decision. The court need not reach the conclusion that Arbitrator Fabian's interpretation was the correct one. Even if it were incorrect, it is rationally based on the contract language and is not "indisputably and genuinely without foundation." *Cheyney*, supra, at 150. The court should not vacate an arbitrator's award simply because it favors its own interpretation of the CBA over the arbitrator's interpretation. *See also Conneaut Sch. Serv. Pers. Ass'n v. Conneaut Sch. Dist.*, 508 A.2d 1271, 1275 (Pa. Cmwlth. 1986) ("Because the timeliness of the grievance was covered by the contract and therefore squarely committed to the arbitrator's discretion, courts

322

have 'no business' overruling the arbitrator merely 'because their interpretation of the contract is different from his.'") (quoting *Leechburg Area Sch. Dist. v. Dale,* 492 Pa. 515 (1981)).

Based on the foregoing, the court enters the following:

ORDER

And now, January 28, 2011, it is the order of this court that Moshannon Valley School District's Petition to Vacate Award of Arbitrator be and is hereby denied.