# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lackawanna County | : | |
| | : | |
| v. | : | No. 657 C.D. 2017 |
| | : | Argued: December 4, 2017 |
| Lackawanna County Adult and | : | |
| Juvenile Probation and Domestic | : | |
| Relations Section Employees | : | |
| Association, | : | |
| Appellant | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION BY
JUDGE COHN JUBELIRER                           FILED:  January 10, 2018

Lackawanna County Adult and Juvenile Probation and Domestic Relations Section Employees Association (Association) appeals from the May 5, 2017 Order of the Court of Common Pleas of Lackawanna County (trial court), which granted the Petition of Lackawanna County (County) to vacate an arbitration award (Arbitration Award).  The Association argues that the trial court erred when it concluded that a gift day policy granting Association members a paid holiday of either Christmas Eve or New Year's Eve did not draw its essence from the parties' Collective Bargaining Agreement (CBA).  Alternatively, the County argues for affirmance on the basis that the gift day policy violates the public policy exception to the essence test in that it violates the separation of powers doctrine.  Because, under these facts as determined by the Arbitrator, the gift day policy had become a

past practice of the County, and so did draw its essence from the CBA, and there was no violation of the public policy exception, we reverse the trial court's Order and reinstate the Arbitration Award.

## I. Background

The Association and the County are parties to a CBA in effect from January 1, 2010, until December 31, 2013, but which was extended by an interest arbitration award to December 31, 2017. Article 16 of the CBA provides that "[t]he following holidays will be observed as paid holidays for all full time employees covered by this Agreement[.]" (Reproduced Record (R.R.) at 20a.) The CBA provides for 14 paid holidays, but it names neither Christmas Eve nor New Year's Eve as paid holidays. The CBA also provides that in the context of a grievance, "[t]he arbitrator shall have no power or authority to add to, subtract from or modify the provisions of this Agreement in arriving at a decision of the issue or issues presented and shall confine his/her decision to the application and interpretation of this Agreement." (*Id.* at 39a.)

On October 19, 2015, the Association filed a grievance, alleging that the County had ceased complying with its past practice of providing Association members with a gift day. Specifically, one-half of Association members were given a paid day off, or gift day, on Christmas Eve, and the other half of the members were given a gift day on New Year's Eve. (2003 Vacation Policy, R.R. at 70a.)

According to the testimony at the arbitration hearing, as recounted in the Arbitrator's Opinion, Patrick Luongo, the former Director of the County's Domestic Relations Office, instituted the gift day policy beginning in 2001. (Arbitrator Op. at 2, R.R. at 80a.) Before doing so, Luongo consulted with the President Judge of the

Court of Common Pleas of Lackawanna County (Common Pleas)[1] who told him that whether to institute the gift day policy was up to Luongo. (*Id.*) Luongo testified that "he had the authority to decide whether to grant gift days, and [he] merely told the [P]resident [J]udge of his decision." (*Id.* at 3, R.R. at 81a.) Each year, Luongo would issue a vacation policy, setting forth, among other things, procedural issues relative to the gift day policy. (*Id.*) According to Luongo, written vacation policies were started in 2002. The Association submitted into evidence the written vacation policies for 2003, 2004, 2006, 2007, and 2014, each of which mentions the granting of gift days for Christmas Eve or New Year's Eve to Association members. (Vacation Policies, R.R. 65a-70a.) "Luongo testified that the gift day policy, in general, lasted from 2001 to 2014," but that gift days were not granted every year; he was not more specific other than mentioning that there were no gift days in 2011. (Arbitrator Op. at 3, R.R. at 81a.) Another Domestic Relations employee, Daniel Ebersole, testified that the gift day policy started in 1998 "and was granted each year until 2015." (*Id.*)

In 2015, Luongo stopped granting gift days "after the County's labor counsel advised [him] that such a benefit might result in a future unfair labor practice" charge since only a portion of the bargaining unit was granted gift days and "the policy paid members for time they had not worked." (*Id.* at 4, R.R. at 82a.) Counsel's advice was the result of a then pending unfair labor practice charge filed by the Association, which ultimately resulted in a settlement (2014 settlement) where "the parties agreed to offer gift days [in 2014] based upon seniority, as opposed to alternating whether employees [received] Christmas Eve or New Year's Eve off." (*Id.* at 4, 12, R.R. at

---

[1] Although, in this case, while our references to the trial court and Common Pleas are to the same entity, we use these two different references to distinguish between who permitted the gift day policy and who reviewed the Arbitration Award.

82a, 90a.) Luongo told the President Judge of his decision to issue a revised gift day policy in 2014 and that he intended to stop the practice in 2015. (*Id.* at 4, R.R. at 82a.) The Arbitrator recounted that "Luongo had the authority to decide whether or not to offer the gift day to employees." (*Id.*)

The Arbitrator granted the grievance and ordered the County to reinstate the gift day policy as agreed to in the 2014 settlement. (*Id.* at 12, R.R. at 90a.) In doing so, the Arbitrator concluded that "it was the County, through Luongo, that had the authority over the gift day policy." (*Id.* at 11, R.R. at 89a.) The Arbitrator went on to conclude that the gift day policy was an established past practice that became a part of the parties' CBA. (*Id.* at 11-12, R.R. at 89a-90a.)

The County then petitioned the trial court to vacate the Arbitration Award, arguing that the Arbitration Award did not draw its essence from the CBA. While acknowledging that the CBA does not have a broad integration clause, the County argued that other language in the CBA strongly suggested that "the parties intended the CBA to be a 'final and complete expression' of their agreement with respect to the terms and conditions of employment, including entitlement to paid holidays." (Petition ¶ 12.) Alternatively, the County argued that the Award had to be vacated because it violated the well-defined public policy of separation of powers, which is an exception to the essence test. (*Id.* ¶ 27.) The Award did so in that it binds Common Pleas to the CBA even though Common Pleas is not a party to the CBA, and the Award compels the County to continue providing and paying for gift days, which Common Pleas no longer wishes to afford to Association employees. (*Id.* ¶ 32.) Vacation scheduling for court employees is part of the judicial branch's supervisory right to direct its personnel, and any interference with this right of the

4

judicial branch by the legislative or executive branches violates the separation of powers principle, the County argued. (*Id.* ¶¶ 29-30.)

The trial court granted the Petition and vacated the Arbitration Award, concluding that it did not flow logically from the parties' CBA and, therefore, failed the essence test. (Trial Ct. Memorandum and Order at 5.)

## II. Analysis

### A. The Essence Test

On appeal, the Association argues that the Arbitration Award does indeed draw its essence from the CBA, emphasizing the very narrow standard of review of an arbitration award. The Association notes that the CBA does not contain a broad integration clause. While acknowledging that the CBA addresses paid holidays, and that an argument could be made that the Arbitrator should not have relied on past practices because the CBA is clear and unambiguous, the Association counters that there is no distinction between ambiguous and unambiguous contracts in the arbitration context. An arbitrator is not limited by the general rules of contract interpretation where language in a CBA is found to be unambiguous. The trial court, the Association argues, substituted its judgment for that of the Arbitrator, which is contrary to the standard of review of an arbitration award.

The County responds that the Arbitration Award does not draw its essence from the CBA. While noting that there is no broad integration clause in the CBA, the Association points to other provisions in the CBA as proof that the CBA is fully integrated with respect to paid leave.

A grievance arbitration award is reviewed under the essence test, which sets forth a two-prong test: a court must determine whether "the issue as properly defined

is within the terms of the" CBA, and, if so, whether the "arbitrator's interpretation can rationally be derived from the" CBA.[2] *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007) (quoting *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 403, 413 (Pa. 1999)). Stated differently, in applying the second prong, a reviewing court does not inquire into whether the arbitration decision is reasonable or even manifestly unreasonable, but rather the question is whether the award may in any way be rationally derived from the agreement between the parties, "viewed in light of its language, its context, and any other indicia of the parties' intention[s.]" *Id.* at 862-63. Thus, review of an arbitration award under the essence test is "circumscribed" and entitled to "great deference." *Id.* at 863; *Penns Manor Area Sch. Dist. v. Penns Manor Area Educ. Support Pers. Ass'n*, 953 A.2d 614, 616 (Pa. Cmwlth. 2008).

Here, the County does not dispute, as the trial court concluded, that the Arbitration Award satisfies the first prong of the essence test.

As for the second prong, the County argues that while there is no broad integration clause in the CBA, the parties intended the CBA to be a final and complete expression of their agreement with respect to paid holidays because the CBA states that its provisions represent the bargained for "terms and conditions of employment applicable to the employees represented by the Association," (R.R. at 5a), Articles 16 through 20 of the CBA specifically address the types of paid leave to which employees are entitled, none of which include Christmas Eve and New

---

[2] The County concedes, "[f]or purposes of this appeal only," that the gift day policy was a past practice, (County's Br. at 1 n.1), which, we note, can serve "to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the" CBA. *Cty. of Allegheny v. Allegheny Cty. Prison Emps. Indep. Union*, 381 A.2d 849, 852 (Pa. 1977).

Year's Eve, (*id.* at 20a-27a), and Article 28, involving grievance procedures, prohibits the arbitrator from adding to, subtracting from, or modifying the provisions of the CBA, (*id.* at 37a, 39a). However, none of these provisions of the CBA are inconsistent with the parties agreeing to additional paid holidays. Article 16 merely lists certain holidays that "will be observed as paid holidays," but it does not preclude the parties from agreeing to additional paid holidays. (*Id.* at 20a.) The County, in support of its proposition that these provisions of the CBA constitute the full and complete expression of their agreement, cites to *Kehr Packages, Incorporated v. Fidelity Bank, National Association*, 710 A.2d 1169 (Pa. Super. 1998), but *Kehr* is distinguishable because it involved the interpretation of a credit agreement in the context of a sale of a business, and not the interpretation of a CBA. In contrast, in *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 381 A.2d 849, 850, 854 (Pa. 1977), where the parties' CBA included a broad integration clause but did not mention past practices, and the Union grieved two aspects of mealtime conditions, claiming that those conditions were implicitly incorporated into the CBA via past practice, our Supreme Court held that those conditions were not part of the CBA. Specifically, the Supreme Court held,

> where a collective bargaining agreement not only makes no mention whatever of past practices but does include a broad integration clause, an award which incorporates into the agreement, as separately enforceable conditions of the employment relationship, past practices which antedate the effective date of that agreement cannot be said to "draw its essence from the collective bargaining" agreement.

*Id.* at 854. In *County of Allegheny*, unlike here, the adoption of past practices not included within the CBA would have conflicted with the CBA's broad integration

7

clause,[3] and, therefore, the past practices could not be part of the CBA. *See also Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 38 A.3d 975, 982 (Pa. Cmwlth. 2011) (reviewing *County of Allegheny* and noting that "a past practice cannot be used where it is proscribed or conflicts with the language of the current" CBA). Here, in contrast, in the absence of a broad integration clause in the CBA, or other such conflicting language, the Arbitrator could interpret the CBA as including past practices such as the gift day policy. *See City of Carbondale v. Fraternal Order of Police Lodge 63*, 531 A.2d 76, 78 (Pa. Cmwlth. 1987) (holding that where the CBA contained no broad integration clause, the arbitrators did not err in interpreting the agreement to include past practices). Therefore, the trial court erred when it concluded that the gift day policy did not draw its essence from the CBA.

## B. Public Policy Exception to the Essence Test

Alternatively, the County argues that the Arbitration Award violates the public policy exception to the essence test, namely, the public policy of separation

---

[3] The integration clause of the CBA in *County of Allegheny* provided as follows:

1. The parties mutually agree that the terms and conditions expressly set forth in this Agreement represent the full and complete agreement and commitment between the parties thereto.
   . . .
2. All items proposed by the Union, whether agreed to or rejected, will not be subject to renegotiation until negotiations for a new contract commence . . . and items included within the scope of the bargaining which were or are not proposed by the Union shall likewise not be subject to negotiation until the period specified above . . . .

*Cty. of Allegheny*, 381 A.2d at 854 n.15.

of powers.[4]  The County contends the Arbitration Award violates the separation of powers in that the legislative branch, which is the County, is required to compel the judiciary to continue providing judicial employees with paid time off that the judiciary no longer wishes to provide.  According to the County, the judiciary alone has the right to hire, fire, and supervise its employees, and its authority over court personnel is essential to the maintenance of an independent judiciary; here, the Arbitration Award impairs that right of the judiciary.  Further, the County posits the Arbitration Award requires the County to dictate to Common Pleas how it should allocate its budget in that Common Pleas has to allocate at least a portion of its annual budget to pay these employees for a gift day.[5]

In *Westmoreland*, our Supreme Court carved out a narrow exception to the essence test whereby an arbitration award will be vacated if it violates a "well-defined, dominant" public policy.  *Westmoreland Intermediate Unit #7*, 939 A.2d at 866.  The public policy must be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."  *Id.*

Even assuming the separation of powers doctrine meets the requirements of the public policy exception to the essence test, the Arbitration Award, under these facts, does not violate the separation of powers doctrine.  The Arbitrator specifically found that it was Luongo's idea to grant Association members a gift day of either Christmas Eve or New Year's Eve, and, when Luongo presented his idea to the President Judge of Common Pleas, the President Judge said that it was up to Luongo.

___

[4] The public policy exception to the essence test presents a pure question of law and, thus, our standard of review is *de novo*.  *Phila. Hous. Auth. v. Am. Fed'n of State, Cty. & Mun. Emps., Dist. Council 33, Local 934*, 52 A.3d 1117, 1121 (Pa. 2012).

[5] The Association did not submit a reply brief responding to the County's argument that the Arbitration Award violates the separation of powers doctrine.

9

While the Arbitrator mistakenly stated that Luongo was a County employee, such is of no moment since by law, and as the County acknowledges in its brief (County's Br. at 9), Luongo was a court employee.[6]  Section 961 of the Judicial Code, 42 Pa. C.S. § 961 ("Each court of common pleas shall have a domestic relations section, which shall consist of such probation officers and other staff of the court as shall be assigned thereto.").  Thus, this is not a case where the county commissioners, pursuant to Section 1620 of the County Code,[7] 16 P.S. § 1620, while bargaining on behalf of the judges, unilaterally reached an agreement with union employees on an issue affecting the administration of justice without first consulting with the judges. *See Cty. of Lehigh v. Pa. Labor Relations Bd.*, 489 A.2d 1325, 1329 (Pa. 1985) (stating that county commissioners "must consult" with the judges to ascertain whether a proposal in a CBA, such as a shorter work day, increased vacation time, or additional paid holidays in return for a smaller wage increase, would affect the administration of justice).  Rather, the judiciary itself apparently was involved in, and at the least approved of, granting these Association members a gift day of either Christmas Eve or New Year's Eve.  Over time, this granting of a gift day became a past practice.  Common Pleas, like any other public employer, can become bound by a past practice. *See Commonwealth of Pa. ex rel. Bradley v. Pa. Labor Relations Bd.*, 388 A.2d 736, 739 (Pa. 1978) (holding that court reporters are public employees under the Public Employe Relations Act[8] and thus are entitled to enjoy its benefits).  Therefore, Common Pleas cannot unilaterally terminate the gift day policy but must

---

[6] The parties' CBA sets forth that these employees "are involved with and necessary to the functioning of the courts and are hired, fired[,] and directed by the courts[.]" (R.R. at 6a.) Counsel for the Association also stated during oral argument before this Court that Luongo was a court employee.

[7] Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1620.

[8] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

first bargain with the Association over it. *Penns Manor Area Sch. Dist.*, 953 A.2d at 619.

Accordingly, we reverse the trial court's Order and reinstate the Arbitration Award.

_____

**RENÉE COHN JUBELIRER,** Judge

Judge Cosgrove did not participate in the decision in this case.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lackawanna County | : | |
| | : | |
| v. | : | No. 657 C.D. 2017 |
| | : | |
| Lackawanna County Adult and | : | |
| Juvenile Probation and Domestic | : | |
| Relations Section Employees | : | |
| Association, | : | |
| Appellant | : | |

# **O R D E R**

**NOW**, January 10, 2018, the May 5, 2017 Order of the Court of Common Pleas of Lackawanna County, vacating the Arbitration Award, dated August 17, 2016, is **REVERSED**, and the Arbitration Award is **REINSTATED**.

_____
**RENÉE COHN JUBELIRER**, Judge